FILED

2023 Nov-16  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TRENTON ROGERS GARMON,** | ) | |
| **GARMON MINORS (SG, JG, JG, & SG)** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO.** |
| | ) | **4:23-cv-01525-CLM** |
| | ) | **[Opposed]** |
| **v.** | ) | |
| | ) | |
| **GOOGLE LLC & ALPHABET INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM SUPPORTING DEFENDANTS' MOTION TO DISMISS

Defendants Alphabet Inc. ("***Alphabet***") and Google LLC ("***Google***") hereby

submit this memorandum supporting their Motion to Dismiss.

## INTRODUCTION

Dissatisfied with the "fairness" of Google News' collected search results for

Garmon after searching his own name, the Complaint asserts four (4) claims

against Defendants under Alabama law, for: (i) defamation, (ii) intentional

infliction of emotional distress, (iii) negligence, and (iv) injunctive relief. Stripped

to its core, the Complaint asserts the "News" search option on Google's search

engine platform must provide search results about Plaintiff Garmon that are

"balanced." The Complaint alleges Google employs an algorithm, however, that

only displays "negative" stories about Garmon and other "American Caucasian

Christian" males under the "News" tab, resulting in a purported "systematic algorithm defamation." No court has recognized such a claim, and this Court should not be the first.

The Complaint should be dismissed for multiple reasons. First, the First Amendment bars any claim based on Google's selection and ordering of search results regarding Mr. Garmon.  Second, any claim based on third-party content is barred by Section 230 of the Communications Decency Act. Third, Plaintiffs fail to state a plausible claim for relief under Alabama law for defamation or any other tort. The Complaint should be dismissed with prejudice.

## BACKGROUND AND RELEVANT FACTS

### I. The Plaintiffs.

Garmon resides in Alabama. (Dkt. 1-1 at Compl. ¶ 1.) The "Garmon minors" are under the age of majority and are "natural born Alabama citizens."[1] (*Id.*) Garmon describes himself as a "prominent civil rights lawyer" who has been the subject of and appeared in numerous "news" articles, and was counsel to former Alabama Chief Justice Roy Moore. (*Id.,* ¶ 9.)

Garmon complains that a "simple search of the Plaintiff's name 'Trenton Garmon'" causes a specific search result under the Google "News" tab ("Google

---

[1] The Complaint does not claim that Mr. Garmon's children have been defamed. Instead, they are named parties solely because "[t]he elder four Garmon minors['] names are linked to the Knowledge Panel and general Search Engine Results." (Compl. ¶ 1.)

News") that provides "thirty-eight (38) results which are all negative articles [about Plaintiff]." (*Id.*, ¶¶ 7-8.) Garmon has attached a selected search from Google News as an Exhibit, which is undated. (*Id.*, Ex. 1.[2]) The Complaint does not identify any false statement of fact in any Google News search result (though Garmon contests the context of some of them – for example, while Garmon does not contest he was arrested on DUI charges in 2019, he nevertheless claims the stories are incomplete). Neither does Garmon contest the organic search results on google.com for "Trenton Garmon" – as such, Garmon's alleged "cancel culture algorithm" appears limited to specific searches on Google News.[3]

As to the "negative algorithm" for Google News, Garmon claims the results ignore seven (7) "positive" news articles about Garmon. (*Id.*, ¶ 36.) The Complaint asserts that a search of "Trenton Garmon" across non-Google search engines provides a "reasonably balanced [mix] of positive articles, attack articles, negative articles, debunked articles and other general images and data." (*Id.,* ¶ 7.)

Finally, Garmon claims that a "Knowledge Block"[4] about "Trenton Garmon" that appears above or next to some search results does not convey that

---

[2] The Complaint includes several pages of unpaginated "exhibits," which were all filed collectively. This brief therefore collectively refers to these documents as "Exhibit 1."

[3]  Garmon does not take issue with Google's organic search results on google.com for good reason: as of November 13, 2023, a search for "trenton garmon" on google.com has Mr. Garmon's Instagram, Facebook, LinkedIn and Twitter pages along with ALABnews article *Birmingham attorney Trenton Garmon suspended from law…"* rounding out the top five results.

[4] Google refers to these portions of search results as "Knowledge Panels"; more information on them is publicly available at https://support.google.com/knowledgepanel/answer/9163198?hl=en.

Garmon is divorced or a "divorced annulment candidate." (*Id.*, ¶ 38.) Here is the relevant part of the Knowledge Panel:

> **Born:** 1979 (age 44 years), Gadsden, AL
>
> **Spouse:** Holly Garmon (m. 2009)
>
> **Education:** Troy University, Regent University, Birmingham School of Law

(Compl. at Ex. 1.) Garmon objects that the Knowledge Panel lists Mr. Garmon's ex-wife, Holly, as his "Spouse" in conjunction with the "m. 2009" notation. (*Id.*, ¶ 17.) Garmon does not dispute either that Holly Garmon was his wife or that he was married to Ms. Garmon in 2009. The Complaint does not allege any details related to his divorce or annulment. (*Id.*, ¶ 38.)

## II.     The Defendants.

As alleged in the Complaint, Google is a "Search Giant" which "operates nationally and globally which includes operating a 'Search Engine' platform, among other web search engine platforms." (Compl. ¶ 2.) The Court may take judicial notice that Alphabet is the holding company of Defendant Google. *See Twitter, Inc. v. Taameh*, 598 U.S. 471, 479  n.3 (2023). Alphabet's "website" is www.abc.xyz.com. Google operates the search engine at www.google.com, which responds to users' search queries with a list of responsive websites and images. *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1134 (9th Cir. 2022).

Search engines "are indexing tools used to locate websites that correspond to a user's search query. Search queries typically consist of one or more words or phrases that identify or are related to the subject of the search." *Search King Inc. v. Google Tech., Inc.*, No. CIV-02-1457-M, 2003 WL 21464568, at *1, 3 (W.D. Okla. May 27, 2003) ("[E]very algorithm employed by every search engine is different, and will produce a different representation of the relative significance of a particular web site depending on the various factors, and the weight of the factors, used to determine whether a web site corresponds to a search query.").

## III.   The Claims Asserted In The Complaint.

The Complaint seeks over $66 million in damages due to Google allegedly manipulating Google News by "engaging in 'cancel culture' negative algorithms by code design practice … that intentionally exiles, targets and otherwise seeks to digitally suppress and damage the online reputation of Christians, specifically male, American Caucasian Christians." (Compl., ¶ 4.) The Complaint attacks the "fairness" of Google News search results versus the results of other search engines because Google News does not display enough "positive" articles about Garmon:

- "For instance, a simple search of the Plaintiff's name 'Trenton Garmon' across all the Search Engine platforms, but for Google causes the surfacing in a reasonably balanced manner of positive articles, attack articles, negative articles, debunked articles and other general images and data." (*Id.,* ¶ 7.)

- "However, the identical search on Google literally renders only three pages in the 'News' section with thirty-eight (38) results all of which are negative articles." (*Id.,* ¶ 8.)

- "The Defendants also defame the Plaintiff by refusing to mitigate, balance and address (1) a 'fake mug shot' of the Plaintiff . . . ; (2) the Defendants refuse to update the 'Knowledge Panel' . . . , (3) the Defendants search engine algorithm intentionally displays a 'bad hair & beard, surprise picture' . . . , (4) the Defendants search engine, compared to the others which do not, lists all negative articles and attack articles which have been debunked while not listing the debunking . . . , [and] (5) the Defendants fail to bring medical disclosure balance to an article . . . ." (*Id.,* ¶ 13.)

As to the claims, each is listed below in order of appearance:

- **Defamation & Defamation Per Quod**: Google allegedly employed a "negative" search algorithm targeting Garmon and politically conservative Christian men (*Id.*, ¶¶ 41-56);

- **Intentional Infliction of Emotional Distress**: Defendants allegedly intentionally inflicted emotional distress by suppressing positive news articles about Garmon (*Id.,* ¶ 57);

- **Negligence & Negligent Algorithm Coding**: Defendants allegedly breached their duty to respond to requests to change its Google News search results for Garmon (*Id.,* ¶ 58); and

- **Petition and Claim for Injunctive Relief**: Seeking an order enjoining use of the alleged negative algorithm for Google News (*Id.,* ¶ 59).

The Complaint alleges no facts as to the details of Google News' supposed

"negative algorithm"; i.e., there are no facts showing how Google supposedly

enacted such a plan for Google News; how the algorithm was supposedly

developed and employed; or how and why Google News only presents negative articles about Garmon but other Google search options do not.

As to the Knowledge Panel, Garmon claims Google did not "modify the 'Knowledge [Panel]' to 'Divorced' or 'Divorced, Annulment Pending'" at his request, though he does not identify when the request to Google was made, to whom it was directed, or what information was presented. (*Id.*, ¶¶ 17, 38.) Nor does Garmon allege he undertook the process Google provides to prioritize *verified feedback* from the subjects of Knowledge Panels.[5]

As for the allegedly defamatory content in the Knowledge Panel, Garmon does not claim the term "Spouse" itself is defamatory and does not identify any specific economic or special damage arising from this portion of the Knowledge Panel; rather, he complains that it should say "Divorced" because Garmon is "courting" and the Knowledge Panel causes "confusion." (*Id.*, ¶ 17.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "need not accept legal

---

[5] For more about that process, see the publicly available site explaining it here: https://support.google.com/knowledgepanel/answer/9163198?hl=en.

conclusions or unwarranted factual inferences as true." *Byrdsong v. A&E Television Networks, LLC*, 2021 WL 6050687 *2-3 (N.D.Ala. 2021) (Maze, J.) (plaintiff may not rely on "vague or conclusory statements" or "immaterial facts"). Although *pro se* pleadings are liberally construed, the Court may not serve as *de facto* counsel and rewrite a deficient Complaint, *Dowbenko v. Google Inc.*, 582 Fed. App'x 801, 804-5 (11th Cir. 2014), particularly here, where Mr. Garmon is an attorney who has previously appeared before this Court. *See Byrdsong*, *supra*.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Certain Parties Are Improper And Should Be Dismissed.

#### A. Alphabet Is Not A Proper Defendant In This Case.

As a preliminary matter, Defendant Alphabet is not a proper defendant in this action. Alphabet is not the same legal entity as Google, though the Complaint tries to impute Google's alleged conduct to Alphabet. Instead, Alphabet is solely the holding company of Google; the mere fact that Alphabet owns Google does not subject Alphabet to a suit.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *Walk, Inc. v. Zimmer, Inc.*, No. 2:13-CV-01743-JEO, 2014 WL 2465311, at *4 (N.D. Ala. May 30, 2014) (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998)). In order to state a claim against Alphabet, or to impute Defendant

8

Google's conduct onto Alphabet, the Complaint must allege facts indicating Google is the "alter ego" of Alphabet, Alphabet has control over Google, and the Garmons were harmed through any alleged misuse of the corporate form. *Id.* at *5. No such facts are remotely pleaded here. Alphabet should be dismissed.  *See Manigault-Johnson v. Google LLC*, 2019 WL 3006646. *2-3 (D.S.C. 2019) (dismissing Alphabet, ruling plaintiff could not "lump together" Google and Alphabet and then "ascribe liability to the group" without specific allegations).

## B. The Garmon Minors Are Not Proper Plaintiffs.

The Garmon minors simply have no claim. The entire alleged connection between the Garmon minors and the purportedly tortious conduct at issue is that "[t]he elder four Garmon minors['] names are linked to the Knowledge Block and general Search Engine Results." (Compl., ¶ 1.)  There is not any allegation, however, that the Garmon minors themselves have been defamed or otherwise targeted and/or injured by any of the conduct alleged. Their claims are therefore deficient on their face. *See Larrimore v. Dubose*, 827 So.2d 60, 62 (Ala. 2001) (ruling that defamation is "personal to the party defamed" and family members cannot sue for the defamation of other family members).

## II. Google News Search Results Are Fully Protected By The First Amendment.

The core of the Complaint is that Google News search results for "Trenton Garmon" are "unfair" and "negative" to Garmon, and Google News must also

9

include "positive" search results to satisfy Garmon's version of a "balanced" portrayal. This does not state a claim, as Google's decision as to what "news" appears in Google News search results (based upon its algorithm) is absolutely protected by the First Amendment. *See Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.*, 515 U.S. 557, 573 (1995) ("[T]he fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message.").

### A. Google's Decisions On What Qualifies As "News" For Google News Search Results Are Protected By The First Amendment.

The First Amendment "guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 782 (1988). "[F]reedom of speech prohibits the government from telling people what they must say." *Agency for Int'l Dev. V. Alliance for Open Soc'y Intl., Inc.,* 570 U.S. 205, 213 (2013). Further, in the news publishing arena where the First Amendment applies with special force, editorial decisions regarding what is news and what to report are absolutely protected, as "whether fair or unfair – [editorial decisions on what to include or exclude from publication] constitute the exercise of editorial control and judgment" protected by the First Amendment. *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

It is beyond peradventure that Google News search results are "speech" fully protected by the First Amendment. *See, e.g.*, *Netchoice, LLC v. Attorney General, Florida*, 34 F.4th 1196, 1212 (11th Cir. 2022) (decisions by social media platform's "decisions about whether, to what extent, and in what manner to disseminate third-party-created content to the public are editorial judgment protected by the First Amendment"); *accord e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1274 (M.D. Fla. 2016) (search engine output results are protected by the First Amendment); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 439 (S.D.N.Y 2014) ("When search engines select and arrange others' materials, and add the all-important ordering that causes some materials to be displayed first and others last, they are engaging in fully protected First Amendment expression"); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (injunctive relief sought by the plaintiff "contravenes [Google's] First Amendment rights"); *Search King,* 2003 WL 21464568, at *4 (Google's PageRank system "entitled to full constitutional protection"). The reason is clear: the "dissemination of information [is] speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). As explained in *Zhang:*

> The central purpose of a search engine is to retrieve relevant
> information …and to organize it in a way that would be most helpful
> to the searcher. In doing so, search engines inevitably make editorial
> judgments about what information (or kinds of information) to include

in the results and how and where to display that information (for
example, on the first page of the search results or later).

10 F. Supp. 3d at 438. Thus, "[a] search engine is akin to a publisher, whose
judgments about what to publish and what not to publish are absolutely protected
by the First Amendment." *e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL
2210029, at *4 (M.D. Fla. Feb. 8, 2017).

## B. The First Amendment Prohibits Second-Guessing News Search Results.

Applying the protections afforded by the First Amendment to this case,
courts uniformly reject claims seeking to impose liability on search engines for
excluding particular websites or for the sequence of their search results. Several of
these precedents involve Google itself.

First, in *Search King v. Google*, the court ruled that Google's PageRank
algorithm was fully protected by the First Amendment in dismissing a claim for
tortious interference based on Google allegedly diminishing the position, or rank,
of plaintiff's website in search results. 2003 WL 21464568, at *2-4. In so doing,
the court ruled Google's search results "do not contain provably false
connotations" *in toto*, and were therefore protected "opinion": "[o]ther search
engines express different opinions, as each search engine's method of determining
relative significance is unique. The Court simply finds there is no conceivable way
to prove that the relative significance assigned to a given web site is false." *Id.*

Second, in *Langdon,* the First Amendment required dismissal of a complaint challenging Google's removal of plaintiff's website from search results. 474 F. Supp. 2d at 629-30. The plaintiff alleged that Google's removal decision was "fraudulent, arbitrary, and punitive," but the *Langdon* Court ruled that the claims impermissibly sought to "compel [Google] to speak in a manner deemed appropriate by Plaintiff and would prevent Google from speaking in ways that Plaintiff dislikes." *Id.* at 629.

Third, in *e-ventures Worldwide*, the plaintiff asserted claims based on Google's alleged removal of plaintiff's websites. 2017 WL 2210029 at *2. Google argued "the removal of [the plaintiff's] websites from Google's search engines is not a false statement and is thus protected by First Amendment speech." *Id.* at *4. The court agreed, ruling that "Google's actions in formulating rankings for its search engine and determining whether certain websites are . . . subject to removal are" equivalent to an editor's decisions about "which content to publish, which article belongs on the front page, and which article is unworthy of publication." *Id.* As such, the First Amendment protects these decisions, "fair or unfair." *Id.*

The Complaint here should similarly be dismissed under the First Amendment. Garmon's claim of "systematic algorithm defamation" does not state a claim as Plaintiffs cannot hold Google liable for "editorial" decisions about what information to include in Google News search results about Garmon. *See Search*

13

*King,* 2003 WL 21464568 at \*4; *Langdon*, 474 F. Supp. 2d at 629-30; *e-ventures*, 2017 WL 2210029 at \*4. Moreover, Garmon's claims that different search engines (including Google) return different search results for Garmon is irrelevant: different search engines offer different views of what is newsworthy and/or relevant to users. The First Amendment protects this diversity of search results just as it protects different decisions by different news outlets about what stories to cover and what facts to include in a given story. *See Netchoice*, 34 F.4th at 1213-14 (content moderation decisions protected under First Amendment as expressive conduct, including "platforms [who] exercise editorial judgment to promote explicitly political agendas"). The First Amendment forbids Garmon from imposing his view of what constitutes "News" about Garmon on Google. *Trump v. Cable News Network, Inc.*, -- F. Supp.3d --, 2023 WL 4845589 (S.D. Fla. 2023) (dismissing defamation claims against CNN where Trump claimed that CNN's coverage of him was unfair as compared to other politicians).

In sum, the First Amendment prohibits Garmon from telling Google what to report about Garmon. Allowing the Complaint to proceed would violate "the fundamental rule" of the First Amendment "that a speaker has the autonomy to choose the content of his own message." *Hurley*, 515 U.S. at 573.

## III.    Plaintiffs' Claims Are Barred By § 230 Of The CDA.

The Complaint's "negative algorithm" claim and any other attempt to hold Google liable for hosting third-party content with respect to Google News is also barred by § 230 of the Communications Decency Act (the "*CDA*").

### A. Section 230 Is Broadly Construed To Bar Claims Against Defendants Which Are Based On Content Created By Third Parties.

"Section 230 of the [Communications] Decency Act immunizes internet service providers from liability for content originated by others." *Dowbenko v. Google Inc.*, 991 F. Supp. 2d 1219, 1220 (S.D. Fla. 2013), *aff'd*, 582 Fed. App'x 801 (11th Cir. 2014). Specifically, § 230(c)(1) states: "[n]o provider or user of an interactive computer service shall be treated as a publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 encourages free speech by allowing companies to run online services without fear that they will be held liable for the speech of others:

> The purpose of this statutory immunity is not difficult to discern. Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium. The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum.

*Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *see Am. Income Life v. Google, Inc.*, 2014 WL 4452679, at *7 (N.D. Ala. Sept. 8, 2014) (applying §

230, and ruling that "Google cannot be held liable for search results that yield content created by a third party", dismissing action).

As such, § 230 provides absolute immunity from state law claims like defamation. *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); *see Hinton v. Amazon.com.dedc*, *LLC*, 72 F. Supp. 3d 685, 689 (S.D. Miss. 2014) (§ 230 immunity extends to requests for injunctive relief). Moreover, due to its robust scope, Section 230 immunity should be decided with all doubts "resolved in favor of immunity." *See Goddard v. Google Inc.*, 2008 WL 5245490, at *2 (N.D. Cal. Dec. 17, 2008). Courts therefore "aim to resolve the question of § 230 immunity at the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009).[6] As to its elements, § 230 immunity applies where: (1) the defendant is a "provider or user of an interactive computer service"; (2) the information or statements at issue come from "another information content provider;" and (3) the plaintiffs' claims seek to treat the defendant as a "publisher or speaker" of the information or statement. 47 U.S.C. § 230(c)(1). Each element is met here.

### B. Defendants Have §  230 Immunity Against Garmons' Tort Claims.

---

[6] Numerous courts have applied § 230 on Rule 12 motions in ruling online services are immune from suit for claims that seek to treat such services as the publisher or speaker of content created entirely by third parties. *E.g.*, *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *3 (11th Cir. June 12, 2023) (*per curiam*); *Monsarrat v. Newman*, 28 F.4th 314, 320 (1st Cir. 2022); *Force v. Facebook, Inc.*, 934 F.3d 53, 71 (2d Cir. 2019).

     *i.  Google Is An Interactive Computer Service.*

An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). Courts have repeatedly found Google to qualify as an "interactive computer service." *See Am. Income*, 2014 WL 4452679 at *8 (Google is an "internet service provider"); *Dowbenko*, 582 Fed. App'x. at 805 ("Google is an interactive computer service provider."). There is no reason to reach a different result here.

     *ii.   The Alleged Defamatory Websites Were Not Created Or Developed By Defendant Google.*

The CDA defines an "information content provider" as the "person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Am. Income*, 2014 WL 4452679 at *6.

Here, the Complaint concedes Defendant Google is not the "information content provider" of the allegedly "negative" articles referenced in the search results at issue. Instead, Garmon alleges a search "on Google literally renders only three pages in the 'News' section with thirty-eight (38) results all of which are negative articles." (Compl., ¶ 8.) The Complaint does not remotely allege that Google had a material role in creating or developing the allegedly defamatory

"negative articles" that appear to be the target of Garmon's claim. Nor can Google be held liable for its editorial decisions in presenting those search results. *See O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016) (Google not a "content provider" under § 230 of CDA for editorial decisions with search results that provided access to third-party content; "[T]he term "develop" does not include the functions of an ordinary search engine"; affirming dismissal) (cleaned up). Google is therefore, as a matter of law, not an information content provider as defined in the CDA. *See Am. Income*, 2014 WL 4452679 at *7 ("If a website displays content that is created entirely by third parties, then it is only a service provider with respect to that content – and thus is immune from claims predicated on that content."); *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) ("the interactive service provider receives full immunity regardless of the specific editing or selection process.").

       iii.    *Plaintiffs Seek To Treat Google As The Publisher Of The Articles*.

Finally, the Complaint treats Google as the "publisher or speaker" of the allegedly damaging third-party content, as each claim (defamation, etc.) treats Google as the publisher and seeks relief due to publication of third-party content that Garmon does not like (and the omission of content he favors). *See Dowbenko*, 582 Fed. Appx. at 805 ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether

18

to publish, withdraw, postpone or alter content – are barred."). As such, all of Garmon's claims here are barred because they seek relief based on both *the content of third-party articles* and Google's decision to list them as relevant search results. *See Hinton*, 72 F. Supp. 3d at 690 (cleaned up) (dismissing the plaintiff's complaint because "all of the Plaintiff's claims against [the defendant] arise or stem from the publication of information created by third parties").

## IV.   The Complaint Does Not State A Plausible Claim For Relief.

Finally, as to any remaining claims, including the allegations regarding the "Knowledge Panel", the Complaint does not meet the pleading requirements of Fed. R. Civ. P. 8 or the plausibility standard of *Iqbal*. *See* 556 U.S. at 678.

### A.   There Is No Plausible Defamation Claim.

To meet Fed. R. Civ.  8, the Complaint must plead the basic elements of a claim for defamation under Alabama law. These elements are: (1) "a false *and* defamatory statement concerning the plaintiff;" (2) unprivileged publication of the defamatory statement to a third party; (3) "fault amounting to at least negligence;" and (4) in claims for defamation *per quod*, special damages caused by the publication of the statement. *Dolgencorp, LLC v. Spence*, 224 So.3d 173, 186 (Ala. 2016); *see also Byrdsong*, 2021 WL6050687 at *3. Where the plaintiff is a "public official, public figure, or limited-purpose public figure," the First Amendment also requires clear and convincing evidence that a defendant acted with "'actual

malice'—that is, with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Cottrell v. Nat'l Coll. Athletic Ass'n*, 975 So.2d 306, 333 (Ala. 2007) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)).

### i.  *Google's "Knowledge Panel" Is Not Actionable.*

As to the "Knowledge Panel," Garmon's defamation claim fails as the Complaint fails to: (1) identify any material falsity under the First Amendment; (2) allege special damages caused by the alleged defamatory statements; or (3) allege facts plausibly showing that Google acted with the required "actual malice." *See Green Grp. Holdings, LLC v. Schaeffer*, No. CV 16-00145-CG-N, 2016 WL 6023841, at *19 (S.D. Ala. Oct. 13, 2016) (granting dismissal due to failure to plausibly alleged actual malice).

First, the Panel is technically correct in that Holly Garmon was Garmon's "Spouse," and Garmon does not contest he was married in 2009 ("m. 2009"). If Holly Garmon is Garmon's <u>ex</u>-spouse, Garmon does not indicate how "Spouse" is *materially* false—i.e., how the inaccurate term "Spouse" negatively impacts Garmon's reputation in the community. *Air Wisc. Airlines Corp. v. Hoeper*, 571 U.S. 237, 250 (2014) ("In determining whether a falsehood is material to a defamation claim, we care whether it affects the subject's reputation in the community."); *Bustos v. A&E Television Networks*, 646 F.3d 762, 765 (10th Cir.

20

2011) (Gorsuch, J.) ("By requiring a significant impact on the plaintiff's public reputation when compared to the truth, the material falsehood requirement works as a screen against trivial claims.").

Second and relatedly, labeling an ex-spouse as one's current "Spouse" is not defamatory *per se*. Instead, if an incorrect assertion of marital status is defamatory at all, it is at most *per quod*, which requires allegations of special damages and harm flowing from the purported falsity. *See, e.g.*, *Butler v. Town of Argo*, 871 So.2d 1, 16 (Ala. 2003) (cleaned up) (defamation is "either actionable without having to prove special harm (actionable *per se*) or actionable upon allegations and proof of special harm (actionable *per quod*)"). "Special damages are the material harms that are the intended result or natural consequence of the [defamatory content], . . . and the general rule is that they are limited to material loss capable of being measured in money. . . ." *Id.* at 18. The Complaint, however, does not plead *any* special damages due to the Panel identifying Ms. Garmon as his "Spouse."

Last, the Complaint establishes that Garmon is a "public figure", triggering application of the actual malice standard. For example, the exhibits to the Complaint establish (1) Garmon is a "prominent civil rights lawyers" with "thousands of clients"; (2) Garmon served as chief counsel to former Alabama Supreme Court Chief Justice and U.S. Senate candidate Roy Moore; (3) he has made numerous appearances on television, radio, internet and print news outlets;

and (4) the Google News search results themselves show that Garmon has garnered the type of public attention establishing that he is a public figure. (Compl., Ex. 1.) *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[W] hether an individual is a public figure … is a question of law for the court to decide.").

The Complaint does not meet the actual malice standard. There are simply no facts establishing Google knowingly and intentionally sought to misrepresent Garmon's marital status, with Garmon's allegation that he provided updates on his marital status simply too bare and too conclusory to support a claim. As such, dismissal is appropriate. *Id.* at 702 ("In [public figure defamation] cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation.").

*ii.  The Google News Search Results Are Not False.*

Plaintiffs also fail to plausibly identify any falsity or that Google published the search results with actual malice.

"[T]o pass muster under Rule 8(a)," defamation claims must set forth the allegedly defamatory statement and generally describe the manner in which it was communicated. *See Tolar v. Cummings*, No. 2:13-cv-00132-JEO, 2014 WL 3974671 at *22 (N.D. Ala. Aug. 11, 2014) (dismissing libel and slander claims where "the pleading [did] not give fair notice of what the content of any unprivileged communication …  how exactly it was supposedly false or

defamatory, [and] which 'Defendant' supposedly made it…"). Plaintiffs' Complaint, however, does not identify any single false statement of fact in the Google News search results. *See Byrdsong*, 2021 WL 6050687 at *3-4 ("plaintiffs must allege (with specificity) that the defendants made a particular statement or statements about a particular plaintiff"; dismissing defamation claims without prejudice). Further, as with the Knowledge Panel, Plaintiffs do not plausibly allege that Google published any (unidentified) false statement of fact with "actual malice." *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252-53 (11th Cir. 2021).

## B. The Other Claims Must Also Be Dismissed.

### i. *There Is No Plausible Emotional Distress Claim.*

The elements of an intentional infliction of emotional distress claim are (1) intentional or reckless conduct on behalf of the defendant, (2) that is extreme and outrageous, and (3) "caused emotional distress so severe that no reasonable person could be expected to endure it." *Head v. Baisden*, No. 7:14-CV-01788-HNJ, 2017 WL 5195875, at *4 (N.D. Ala. Nov. 9, 2017) (cleaned up). "[T]he guiding inquiry is ultimately whether a plaintiff has alleged facts so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

The sole allegation supporting this claim is Google "[has supposedly] engaged in a pattern of intentionally inflicting emotional distress by suppressing positive news articles [and] positive data regarding the general personality and reputation of the Plaintiff" causing Garmon "distress." (Compl. ¶ 57.) The claim is not supported by any other facts, does not meet the "outrageous" requirement, and otherwise does not adequately an emotional distress claim.

ii. *There Is No Plausible Negligence Claim.*

The Garmons' claim that "Defendants have a duty to respond to the request for corrections, updates, balanced depictions, links of corrective articles and otherwise by agreement with the users and Plaintiff have a duty to convey the truth" (Compl., ¶ 58) does not state a claim under Alabama law. *See Banks v. SCI Alabama Funeral Services, Inc.*, 801 So. 2d 20, 25 (Ala. Civ. App. 2001) (plaintiff must establish (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached that duty, (3) that the plaintiff was damaged or injured, and (4) that the defendant's breach of duty proximately caused the damage). "Where there is no duty, there can be no negligence." *Ex parte Wild Wild W. Soc. Club, Inc.*, 806 So. 2d 1235, 1240 (Ala. 2001) (citation omitted). Although this claim is already barred by the First Amendment and/or Section 230 and/or the defamation analysis above, Google neither owes Garmon a duty to tailor its search results to Garmon's preferred news narrative nor to update the Knowledge Panel at Garmon's

24

command.[7] Neither duty exists under Alabama law, and any such proposed duty is barred by the First Amendment, as discussed above.[8]

      iii.    *The Garmons Are Not Entitled to Injunctive Relief.*

The Complaint's final count requests an injunction requiring Google to stop running its alleged negative algorithm, correct the Knowledge Panel and issue a report comparing its search results with other "Search Giants." (Compl. ¶¶ 59-61.5.) The request is not an independent claim, and rises and falls with the substantive counts. *Fowler v. Goodman Mfg. Co. L.P.*, 2014 WL 7048581, at *10 (N.D. Ala. Dec. 12, 2014). The requested injunctive relief also seeks a prohibited "prior restraint" as well as "compelled" speech. *See Miami Herald*, 418 U.S. 241.

## CONCLUSION

Defendants respectfully request that their Motion to Dismiss be granted.

Respectfully submitted this 16th day of November, 2023.

                                    */s/James P. Pewitt*
                                    James P. Pewitt
                                    Alabama Bar No.
                                    **JAMES P. PEWITT LLC**
                                    2 20th Street North, Suite 925

---

[7] Plaintiffs cannot evade First Amendment defamation protections by pleading a different cause of action based on the same protected statements. *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 51-56 (1988) (First Amendment barred intentional infliction of emotional distress claim).

[8] Multiple courts have ruled either no duty of care exists with respect to the publication of non-defamatory falsehoods, or —even if such a duty could be found to exist—"the gentle tug of the First Amendment and the values embodied therein would remind us of the societal costs." *Barden v. Harpercollins Publishers, Inc.*, 863 F.Supp. 41, 44 (D. Mass. 1994) (cleaned up).

Birmingham, Alabama 35203
Telephone: 205-874-6686
jim@jamespewitt.com

Eric P. Schroeder
Georgia Bar No. 629880
(*Motion for admission pro hac vice to be submitted*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1201West Peachtree Street, NW
One Atlantic Center, 14th Floor
Telephone: 404-572-6600
Facsimile: 404-572-6999
eric.schroeder@bclplaw.com

*Attorneys for Defendants Alphabet Inc. and Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 16, 2023, a true and correct copy of the foregoing **Defendants' Motion to Dismiss** was served on Plaintiff Trenton Garmon via U.S. Mail, postage prepaid, addressed as follows:

Trenton Garmon & Pro Se Dad
& Natural Guardian for Sydney Marie Garmon,
Judah Michael Garmon, Josiah Rogers Garmon,
Sarah Grace Garmon & James Leon Garmon
75 Arling Place
Gadsden, Alabama 35901
trentongarmon@gmail.com

This 16th day of November, 2023.

*/s/James P. Pewitt*
James P. Pewitt