FILED

2024 Jan-29  PM 03:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE CIRCUIT COURT OF ETOWAH COUNTY, ALABAMA
## IN AND FOR THE SIXTEENTH JUDICIAL CIRCUIT

| | | |
|---|---|---|
| **Trenton Rogers Garmon,** | * | 2024 JAN 29  P 12: 37 |
| **Trentongarmon.ai,** | * | |
| **Plaintiff & Affiant,** | * | U.S. DISTRICT COURT |
| | * | N.D. OF ALABAMA |
| **V.** | * | |
| | * | **Case Numbers:** |
| **Google LLC & Alphabet Inc.** | * | **4:23-cv-01525-CLM** |
| **doing business as "Google",** | * | |
| | * | |
| **Defendants.** | * | |

### MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FAC

Comes now the Plaintiffs and do file this Memorandum Brief Response to Defendant's Motion to Dismiss. The question remaining begged is: Why are articles excluded? That is a question of fact.  And if the basis is tortious and or malicious albeit programmed into an algorithm - it is actionable.  Google envisions a tortfree reality wherein it could string all negative articles, even fakenews while excluding responsive or even "Not Guilty" contextual truths - within their mind - zero liability. In the legal world Google is proposing - all bets are off.  It can string any text it would like, excluding "context", exclude proper light and cast false light with zero liability given it is an "interactive computer service" or so it believes.

Zero liability even if one could prove "black men" were programmed into their algorithm to only display negative news and negative stories about.  Or perhaps if a criteria was that "Native Americans" once coded in the algorithm and an individual's demographic defined within that algorithm, is automatically assigned to a list for

"Casino" marketing.  Is that actionable?  Perhaps not. Perhaps so - the point at this point in the civil procedural realm is that there is a dispute of fact - in this case.  That is very clear.

## INTRODUCTIVE SUMMARY

Plaintiff says - malicious coding factors exist.  Google says - by not responding - yes there are over 200 factors - but that's not relevant - we are an "interactive computer service". And in other arguments Google claims protection as newsoutlet. Point remains - "why" and "what" with fact disputes due to be subject to the test of discovery.

Why are articles excluded and what is the basis - for no Court in America would say - if "Jews" or "black" or "Irish" or "Catholics" were coded for a certain form of discrimination, false light or "Greed based" algorithm that effectively brings to pass "profits for oppressing Jews" and strung antisemetic text, suppresed responsive articles, etc.-  that such would be due tort consideration.   At this junction the "why" and "what" of the algorithm remains - a dispute of fact.  And yes - for a Catholic seeking to remarry, a Christian professional who followed medical advice, an honorably discharged Vet the elevation of fake news while excluding contextual rebuttal responses and "positive" news sources by credible sites (one negative article from al.com is listed while the rebuttal on al.com is excluded).

The "factors" or "criteria" are reached by a social score or social factoring. This is different from simply arguing about the content of the news - fake, negative or

positive. In this case, positive news is oppressed and the factor of "why" and what actual basis caused such within the algorithm is due discovery. Same may then be argued by Google as not a breach of law - but that would be due at a Motion for Summary Judgment. The facts alleged in the Complaint are sufficient when presumed true, which they are, and when taken in a light most favorable to the non-movant party - by law Plaintiff should proceed into discovery.

Again consider, if Google returned a factor which assigned "Jews" news exclusion regarding the deaths of Palastinians. Or if Google targeted a Judge running for reelection and based upon his faith as a Muslim - factored in - would that be protected. By law no. Point is simply - the underlying "factors" are due to be discovered and malicious reasons for excluding news with a clear "false light" perspective is due to be discovered and is actionable. Google envisions a world where the most basic fundamentally clear "fake news" if displayed while credible news rebutting the falsity - by algorithm - is excluded with zero liability. And even zero right its counsel would pro-offer to even inquire into the basis of the factors used in the algorithm. Yes, Trump's lawyers fumbled not getting into discovery and otherwise not properly pleading the matter regarding discriminatory factoring, or underlying malice in the factoring. This case is pled differently and discovery is due.

In Google's legal reality a entire news search result, which is supposed to be based on being "helpful" and "organizational"[1] to that end with objective information, an entire list of "Donald Trump Won the 2020 Election" could be listed and total

---

[1] The "helpful" and "organized" intentions are designed to show a deviation into malice.

suppression of Joseph Biden prevailing per the current political climate's sitaution by analogy. This draws into question other negative consequences of such tortious non-sense, but the point should be clear. Disinformation is actionable. And a jury should resolve the fact disputes of "why" the factors programmed into the algorithm, if malicious or tortious, were utilized.

These are the precise basis of the balance of civil rights, to include the First Amendment, and the limitations in speech - to include both hate, defaming and malicious fake news. The First Amendment would not protect Google from liability if Joseph Biden's campaign sued for news which listed every single "Trump won" article regarding the 2020 campaign - but excluded all the articles which reported Biden's claimed victory. And in like and kind, if an arrest occurs and then a "Not Guilty" the intentions in suppressing the actual, truthful reality of the matter being excluded demands by law discovery to determine the "why" at which point arguments may be made that those are editorial judgments or protected objective algorithm factors. If the discovered factor is protected per the Civil Rights code using same as an exclusionary basis is tortious.

Not in the readable and prudent history of the First Amendment has it been said that outdated stories projecting one light may be strung together and offered as "News" while refusing to report objectively and otherwise while making promises via a User Agreement to be providing objective services - if malice is present. And juxtaposed to the First Amendment protections and limitations is the legal reality that protected classes create proof of malice when utilized to exclude. In fact, the law

makes clear every search engine considered to be an "interactive computer service" has a good faith business intention - to provide an objective organized manner in which helpful information is provided.  It may be helpful to Donald J. Trump if Google were to now only list articles claiming he won the 2020 election - but would it be truthful and would the motives be protected if Google took up such a venture. Point being - there are limitations - and malicious religious based factors with a provable systematic intent to bring false light is not protected.

Google has suppressed arguably twelve articles, to include a rebuttal regarding prescription medication and a rebuttal of a "Not Guilty" finding in a traffic infraction situation.  There is zero reason offered of "why".  The "negative" partial news rebutted on the same medium is not list - why?  Why is one al.com article elevated wherein it is negative and out of context while another al.com article is not listed at all?  Would Google have the Court to believe - if the answer was "because you are a white conservative Christian" that such would be protected?  Sure the corporate representative and coder would likely not offer such a clear, tortious answer. Malicious in fact.  But the question of fact remains and the burden of proof could be otherwise met with a Jury rendering a decision.

The Defendants are seeking to cloud the matter.  Plaintiff first disputes being labeled as a "white-ally bigot[2]" in a non-racial case and has, in fact, had an illustrious career suing the system on behalf of the disenfranchised and bore witness of the falsity of the primary "Pure Spam" two lines on AboveTheLaw.  Plaintiff identifies as

---

[2] All parties were white.

a Catholic, Irish-Cherokee at that.  This is a racial slur against a Irish-Cherokee in a case that only involved Caucasians - thus there was not "minority" to ally against even if the allegations had any basis in reality.  This is white hate - based upon a algorithm factor which negatively social scores based upon discriminatory factors. The religious and race factors are due to be discovered, with perhaps even pro-life coding being protected, but certainly the first two are maliciously included in the algorithm.

## General Responsive Argument

The Plaintiffs assert the Motion to Dismiss is due be denied.  The Defendants are not entitled to a dismissal by law, have confalated the services provided by Google in order to improperly clump defensive arguments.  The Search Beast's motion is premature given Its own acknowledgments.  Discovery has not been conducted.  The Defendants fail to recognize and properly describe the dynamics of their Platform to the Court - at least regarding the underlying "factors".  And then incorrectly seek to clump arguments defensively as if there is but one Service on the Platform.  The traditional search engine algorithm provided fewer services - true.

But this is not simply a "Google news" and general search result case.  Rather, that portion of the Google Service is, in fact, utilzing Artificial Intelligence or Genitive AI, or otherwise implementing an algorithm referred to as a "Greedy best-first search".  That "greed" based algorithm uses a "social score" factoring to then decide to include or exclude webcrawled news.  Those factors are due discovery

- is there a "malicious" underlying criteria.    And it is common tort law and expounded upon in civil rights stated intentions along with Alabama case law that not all "factors" are protected by law.    Would suppressing news of "gas chambers deaths of Jews" been protected if Google had existed and social scored Nazi-opposers in a manner that excluded actual news.    They know better and are hiding discriminatory factors due to be discovered.

By Google's own admission the "Greed" based algorithm is "is an informed search algorithm where the evaluation function is strictly equal to the heuristic function, disregarding the edge weights in a weighted graph because only the heuristic value is considered."[3]    These "edge weights" are based upon "factors".    Is Google saying "exclude Jews" or "exclude Native Americans" with edge results of only negative news would be protected and not even due scrutiny regarding the related malice.    Is excluding "medical prescription news" because someone is "pro-life" or coded as a "Conservative lawyer" or whatever basis protected - while same cast false light?    The criteria are due to be discovered and then those matters argued in a Motion for Summary Judgment and Response. The Defendant has a profit pattern based upon popularity with greed placed first, which may be legal albeit the corporat ethics of the matters smells, but it is certainly not legal for a specific people group by targeting algorithm when the factor considered is protected or otherwise

---

[3] "Greedy best-first search" article retrieved on 20231206 published on "Apr 22, 2023" at https://www.codecademy.com indicating that the Platform Search and News Genetivie Beast has "heuristic" values which it considers and thus are due to be discovered via written and oral depositions.

provable as malicious.    Trump's lawyers were just dull not getting into the discriminatory underlying algorithm factors.

The version of services at issue as acknowledged in the Defendant's Motion is distinct and different in ways.    It relies upon intentional "shortcuts" utilzing terms to create an impression or framework about the individual, entity or topic searched. Autoprompts which then create or drive traffic to the sites or "News" it purports is "best search result" for the user - which includes both positive, negative and reasonably objection "suggestions".    "*Heuristics* (from Ancient Greek εὑρίσκω, heurískō, "I find, discover") is the process by which humans use mental shortcuts to arrive at decisions."    The viewpoint suggested by "term" and applied to after the individual's name is based upon several factors - - Google has recognized that it utilizes at least 200 factors[4] when weighing search results for its General Search. Autosuggestion is no different and indisputably creates a spiral or "funnel" click effect.    There are factors weight for its Genitive AI or "Greedy best-first search" (as the industry refers to it) algorithm which is designed, regardless of the truth or objectivity of the information displayed, to promote profits and political perspetives which includes defaming individuals who do not retain the worldview of the-then algorithm social scoring standard. That with the weighed factors to be specifically discovered are the mechanics of the Defamation. What are these 200 factors? Plaintiff argues bias, malicious tortious factors exist - discovery is due.

### Basic Google Services at Issue

---

[4] Political viewpoints are what Trumps lawyer's argued, but herein discriminatory factors which prove malice is argued and due discovery.

The Google Platform contextually in this case provides to the General Public and Plaintiffs when utilizing Google - (1) a general search algorithm based upon a simple "bar search" which receives user entered text, (2) a news specific search or a news summation which is a different digital algorithm also depending upon user text entered while drawing from selected news sources keyed to a digital dossier which has underlying factors due discovery and (3) a Knowledge Panel which acts as a "Store Sign" or "Homeroom Chalk Board" or "General Bio" of an individual, entity, etc. which is displayed when a search is done in the General Search Bar service of the Platform rendering Google controlled results. These are three separate and distinct services, digitally - while Plaintiff does not dispute Google is legally an "interactive computer service".  Again malice is not protected against, nor is breach of contract given Defendant is a ICS - rather those are the proper counts.

These separate and distinct three services have different algorithms and different levels of control, thereby.  While the first two may more strictly be considered to be derived from an algorithm or code formula which considers weighted factors the third differs.  The Knowlege Panel, as recognized by Google in Its response, consists of information uploaded or input by others, but is uploaded directly to the Google platform.  So the function is not a pulling in and displaying of information housed or stored or being displayed on other sites, rather the Knowledge Panel is a compilation of information entered into Google's Platform directly whether by a random user or even the individual who "Claims the Knowledge Panel."  By claiming the Knowledge Panel" the user then becomes a part of an agreement with

Google as to the requested information displayed, updated or otherwise opposed for whatever reason, being inaccurate or untrue.

The Platform is considered the World's Largest Search Engine. But it is not merely providing a single result - but the company is in fact providing three different services relevant to this action, albeit Google provides other online services as well to include Maps and Work Processing Applications the Equivelent of Microsoft Office, which literally scans data constantly while cloud saving. Thus, Google is not just a search engine data and information provider. The Plaintiffs offer that the complaint is to be accepted as true on its face, it is true, and should be read in a light favorable to Plaintiffs and that the claims plead are done believing all elements will be proven. Would excluding "Election Dates" and "Voting Locations" for minorities be accepted when a social score factor is utilized? These underlying factors are globally due controlled discovery.

The Plaintiffs believe and maintain that by the Defendants own admission: First (1st) have confirmed that an algorithm which weighs factors for General Searches is under Google's control which draws from their party sites which Google is not responsible for the content of. But may per page eleven acknowledged "decisions about weather, to what extent, and in what manner to disseminate third-party created content to the public are editorial judgment protected by the First Amendment." be responsible for under some legal claim - should a defaming scheme and actions be proven. It is responsible for Defamation when malice is present. A result may not intentionally and maliciously suppress specific people groups or

people of certain political viewpoints systemtacially without legal redress. To uncover the "basis" of the weighted algorithm factors[5] discovery is due legally and practically. So no responsibility whatsoever Google says for algorithm weight factors albeit the case law implies otherwise.

Second (2nd) by Google's own admission it summarizes the news of other sites which it maintains entitles it to the Communications Deceny Act Section 230 Protection while It claims as a Newsite it is entitled to the elevated defense of "malice" before a tort for defamation may be maintained. If a clearly Fake News 'article' which provides no "helpful" information rather is an attack - same is actionable as not a Publication. Also, communicating a form of hate speech against a particular race, to wit: Irish-American - "white" Christian - while suppressing a contextual or rebuttal article is malicious.

In these regard, Google must by law elect to be one or the other - a search engine with a news section portion or a News Outlet. And in both scenarios Google is liable. If Garmon is not considered a public figure, then Google is responsible for

---

[5] Litigation over hot topics wherein case law is evolving benefits all within the jurisdiction and collaterally. Hence, understanding the "weight", possible "Social Scoring" and "algorithm basis", even where privilege is claimed, is due the Plaintiffs and citizens at large. Same would include deposition questions in kind of: "What factor determined the exclusion of ABC from the search?", "Are there any elements of a 'Social Score' in determining factors linked to individuals' names for a general search?", "Does the algorithm consider any negative weight to the terms: Holy, prolife, holy water, Christian, evangelical, etc.","Does the algorithm assign a political status and if so how is that weighted?", "Does the algorithm for the News summation rank "news sites" it lists and if so, how are they weighted?", "Does the News algorithm factor the terms Democrat or Republican in assigning any weight?", "What top three criteria does the Google News algorithm consider when deciding how to place in order the results?", "What would cause a news article on a credible site to not be listed in a search?", "Does Google news have any factors of specific terms which cause an article to be suppressed?", "Did the algorithm in this case suppress the 'Holy Water' case of Plaintiff and if so, why?" Catholic discrimination.

the negligent or otherwise careless "Social Score" coding so Plaintiffs believe per the due to be discovered "basis" or reasons applied to their self-disclosed "weighted algorithm."    Or in those regards - Google is both - providing a service of both a search and news summation.   Which lawfully one bears responsibility if both are provided.    And separate torts can be proven.     Plaintiffs maintain that both the General Search and News Summation Search have intentional complete exiled results of a "Holy Water" case and other positive professional results.  This is per se, *de facto* bias in some regard caused by the algorithm.   Only after discovery will there be sufficient light to determine the "why"[6] was the "Holy Water" case not listed in either the General Search or the News Summation Search - when it is listed on all other Search Engines.   Here Google wants the "creativity", even if it contains malicious factors such as edging a "Jew" or "Catholic", to take bits and pieces of articles - string them in a manner it believes reflects along with other articles right below on the same window projection  - hence same "page" but having other "strings" of text from other articles displayed while claiming the "blanket" protection of Sullivan.

In this case, Google news strings or links a two line fake news race baiting articles together without full context and without objective truth from other articles. It is "white hate" given race had nothing to do with the underlying parties or interview and yet Google seeks to bait attacks upon Plaintiff imputing by algorithm factor due discovery. Here "white-ally" as a clearly racial attack of an Irish-Cherokee

---

[6] Malicious "criteria" is actionable whether it be to suppress and exclude positive rebuttal news and context news about a coded "Jew", "Palastianian", "Conservative" or the like. The question of criteria remains due discovery. .

is malcious thus discovery is due - all the parties were "Caucasian" and additionally the co-host is Muslim discussing a case regarding age gaps, not race.

That micro choice of factors and artistic expression of "news" using an algorithm by "weighted factor" is distinct and separate from the intentions of Sullivan. It is a malicious means of suppressing rebuttal news for whatever criteria - believed to be due to race, gender and faith. Meaning Google Suggestions are fueling Google Search results which is fueling clicks and also news views. Thus, in essence de facto Google where social scores are applied to people groups is creating the order by as referenced above - for algorithm profit of it's target political, monetary audience. Google is liable to the Plaintiff for news suppression by negative algorithm factor, defaming weight factors in stringing negative news out of context from single line usage with other single line usage on a "single page" which communicates something untrue it reasonably should have known would communicate something out of context by suppression and is clearly due to answer in discovery questions regarding it's "news algorithm factors" and weighing. This affects everyone - reader and the ones being searched - what terms do you give at their core certain weight to and why. Clearly something caused the terms "holy water" to weigh as zero and be totally excluded from a massive, deep web crawling algorithm. Very odd.

Third, Google claims no responsibility for Knowledge Panel misinformation. It fails to disclose that the Knowledge Panel consists of information "hosted" on Google and not pulled from other sites. From May 7, 2023 Plaintiff requested Knowledge Panel updates and were denied. Google was displaying inaccurate and or untrue

information which it hosts on its site albeit information can be recommended or updated.    Defendant first asserts that all of Plaintiffs claims are barred by the Communications Decency Act (the "CDA"). (Doc. #78, pp. 7-10.) Pursuant to the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by *another information content provider*." 47 U.S.C. § 230(c)(1).  It denies updates and then claims no control over the information.  Thus, as it relates to the "Knowledge Panel" section Google is a hosting site of that information and not merely providing information of "another content provider".  Over time, "It is not disputed that Google is, as courts across the country have agreed, a provider of an interactive computer service." Dowbenko v. Google Inc., 582 Fed.Appx. 801, 805 (11th Cir.2014) ; Langdon v. Google, Inc., 474 F.Supp.2d 622, 630 (D.Del.2007) ; Parker v. Google, Inc., 422 F.Supp.2d 492, 501 (E.D.Pa.2006) ; Novak v. Overture Servs., 309 F.Supp.2d 446, 452(E.D.N.Y.2004). And yet the "Interactive Computer Service" of 2014 is now distinguishable "services".  *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1275 (M.D. Fla. 2016) ("Further, a fact published maliciously with knowledge of its falsity or serious doubts as to its truth is sufficient to overcome the editorial judgment protection afforded by the Constitution. Pittsburgh Press Co., 413 U.S. at 386, 93 S.Ct. 2553.")*Pittsburgh Press Co. v. Human Rel. Comm'n*, 413 U.S. 376, 386 (1973) ("In the context of a libelous advertisement, for example, this Court has held that the First Amendment does not shield a newspaper from punishment for libel when with actual malice it publishes a falsely defamatory advertisement. *New York Times Co*. v. *Sullivan, supra*, at 279-280. Assuming the requisite state of mind, then, nothing in a

newspaper's editorial decision to accept an advertisement changes the character of the falsely defamatory statements. The newspaper may not defend a libel suit on the ground that the falsely defamatory statements are not its own.") Google is creating Greed algorithm search results in conjunction with profiting off of "adverstisement" or "click-bait", in essence providing a form of a "libelous advertisement" similar to that described in Sullivan.

## Notice of Objection to Inaccuracies

"Dissatisifed with the 'fairness' of Google News' collected search results after search his own name" is not the essence of the case. Maliciously attacked by exclusionary algorithm methods, discriminated against due to race, gender, and faith as to picture rotation and the updating of the Knowledge Panel. That is the basics of the case. Malicious and or discriminatory factors are tortious. And malicious factors in an algorithm are a threat to the intentions of the First Amendment. There are three services on Google which work collectively. It's about the general us eof law to deter similar torst in the future, the damages to the Estate of the Family, the damages to the reputation of the Plaintiff Trenton Garmon based upon intentional exclusion of credible news sites, damage to his philanthropic work, damage to his relationships with black[7] friends, damage to relationships of people Garmon pastored, loss of prospective clients which created financial damages and the right to reputation which is a form of a property right. Additionally, the Defendant is seeking to clump the fact pattern into a claim about Google News results, while refusing to address the "why"

---

[7] Inputting "white ally" in a case involving only Caucasian people is de facto racism and designed to race bait, divide and damage the personal relationships of Plaintiff and his general reputation.

articles were excluded and while the other services herein described are not distinguished. Google now retains on its evolved and evolving Knowledge Panel portion of its Algorithm the control over the information which is not intended to be protected by the CDA.

### Summary of Law and Google's Code Element Malice

"Stripped to its core" the search result is malicious, it suppresses weighted groups which are believed to include "white" men, Catholics, pro-lifers, and Christians. Trump's case arguing political party news or individual politicians as due protection from exclusion without arguing the underlying factors were discriminatory drilled the wrong legal well. In this case it is indisputable that Garmon's Christian professional legal service articles (to wit: "Holy Water case" & Pro-life case) were suppressed while clearly fake Publications are elevated out of context. And even a response of a personal medical prescription is suppressed, thus affording no equal responsible common ground and disturbing domestic matters. Plumb lined against every other search engine - the facts speak for themselves and the Plaintiffs are entitled to a Jury. Discriminatory factors based upon religion and race are alleged which arise to malice and due discovery.

The Defendant also argues, misrepresenting the essence and specifics of the Complaint that "No court has recoginzed such a claim and this Court should not be the first." In fact, Google has been held liable for defamation and paid settlements[8]

---

[8]
https://www.theguardian.com/technology/2022/jan/24/google-warns-of-devastating-impact-if-court-ruling-on-defamatory-hyperlinks-not-overturned

on Perpetuated Defamation cases indisputably. Some have made the news[9] and others were confidential to prevent Court and Public Knowledge of the patterns in hopes of mitigating liability. Function wise, it has been prior accepted and decided that Google has "proprietary algorithms" as of 2022 which in the AI age is the equivalent of a decade ago in development given the Platform has expanded its use of various algorithms. *Dreamstime.com v. Google LLC*, 54 F.4th 1130, (9th Cir. 2022) ("Google operates the most used search engine in the world. Google's search engine connects users to websites based on the search query that a user enters into the search bar on Google. Google uses proprietary algorithms to interpret user search queries, cross-reference Google's index of webpages, and display a ranked list of webpages to users. Google's algorithms take into account, among other things, the page's relevance, usability, and age, as well as the user's past behavior and browser settings, to identify and rank relevant webpages. Google also operates a search engine for images ("Google Images") that shows relevant pictures at the top of the search results. Google Images has become the largest image repository in the world. Google does not charge users for its search services.")

*Search King, Inc. v. Google Technology, Inc.*, Case No. CIV-02-1457-M, (W.D. Okla. May. 27, 2003) ("This case involves the interrelationship between Internet search engines and Internet advertising, and their collective connection to the First Amendment. More specifically, the questions at issue are whether a representation of

---

[9] Notice is provided that Google has an active team and contracts with other companies to suppress negative news about google and even to remove and unlink negative articles or documents about Google on other sites. The Wikipedia site regarding "Google Ligitation" found at https://en.wikipedia.org/wiki/Google_litigation has an "editors history" of various users removing cases from Wikipedia that have been filed against Google all digitally provable as a suppression pattern of Google. This is how the "organic" web Giants work and is due discovery.

the relative significance of a web site as it corresponds to a search query is a form of protected speech, and if so, whether the "speaker" is therefore insulated from tort liability arising out of the intentional manipulation of such a representation under Oklahoma law. ") Yet much has changed since 2003.   In fact, even Google acknowledges it is not simply utilizing a "mathmatical algorithm" as it once did albeit Defense counsel has seemed to imply is the only consideration of services or a simple news algorithm.

Rather, the human guided weighted factors or "human editorial choices", which are pled as malicious, Google has utilized "bot" which becomes malicious because it is race, gender and faith worldview based in the Algorithm itself. *Search King, Inc. v. Google Technology, Inc.*, Case No. CIV-02-1457-M, 2 (W.D. Okla. May. 27, 2003) ("Google operates an Internet search engine. Every search engine is controlled by a mathematical algorithm. One component of Google's mathematical algorithm produces a "PageRank," which is a numerical representation of the relative significance of a particular web site as it corresponds to a search query.")   This twenty year old case is the effect of what current Defense counsel is arguing while completely ignoring the Perpetuated Defamation doctrine and cycle by algorithm factoring which is since recognized in other cases and established in *"e-ventures"* case.

Thus the Defendant's Motion should fail.  Motions to dismiss a complaint for failure to state a claim should be granted only where "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King Spa/ding*. 467 U.S. 69, 73 (1984)). Plaintiff disputes that the algorithm factors are random or simply based on "Greed" but rather are malicious in how they are categorized - and based upon profitious "click-bait" without concern over the veracity or truthful light. When considering a motion filed pursuant to Rule 12(b)(6), "[a]ll well-pleaded factual allegations in the complaint are accepted as true . . . and viewed in the light most favorable to the nonmoving party. . . . " *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (internal citations omitted). "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support [its] claims." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).[10] [11] We believe after discovery we can offer evidence that at least one single factor in the weighted algorithm of Google is malicious towards a people group and did specifically maliciously defame Plaintiff. And we believe we can prove a "fake news" or otherwise non-traditional Publication site purporting to be news consisting of two lines provides no helpful information and is untrue, defaming and intentionally out of context based upon Garmon's perceived

---

[10] *Search King, Inc. v. Google Technology, Inc.*, Case No. CIV-02-1457-M, 3-4 (W.D. Okla. May. 27, 2003)

[11] As a note, *Byrdson v. A&E Television Network LLC* WL 6050687 was cited with a reference to "Mr. Garmon is an attorney who previously appeared before this Court" which is true, correct and given the in-person hearing in another case before Judge Corey Maze it is believed the Judge would have a professional recollection.  Thus, maintained is the A&E case involved the mocking of detainees for "entertainment" while representing the filming was a documentary and many of the "participants" did not sign the Waiver or where otherwise mentally disabled - to include the young lady "Booney".  Hence, the case cited was factually true and completely warranted when filed.  Any implicatio otherwise is just a defense lawyer swip at attempts to obtain justice for the oppressed while Garmon was actively practicing.  Same was filed while the facility on the record admitting to be illegally overcrowded above the 865 person limit, thus being in per se violation and also in tort did misrepresent and otherwise abuse power for an entertainment and profitious purpose.

"white" race.  Google also links an article stating that Plaintiff believes "sex with girls in other countries is not a 'bad thing'" while suppressing that the transcript reveals nothing of the sorts was said and the interviewing co-host is a Muslim - hence the context was inverted.  Google, thus, misrepresents Garmon's faith as a Christian while improperly shielding the vetting news fact that Ali Velshi is a Muslim and some sects believe in child marriage.

Defendant also cited a "freedom of speech" and "the First Amendment prohibits the government from telling people what they must say"[12] while ironically the Autosuggest/Autopredict function of Google does just that - - It tells people what to think and suggests actions or situations. Such as adding "died" or "went to jail" for certain individuals socially scored one way (particularly "Conservatives", "White", "Christian", "prolife" and other factors) while expanding positive term autopredictions for those It "likes"[13].  Google has a history of being politically liberal and aligning against who It believes is "conservative" albeit the Plaintiffs are Catholic, hence by some considered liberal and by others conservative issue dependent.  Hate speech, maliciously defaming and false light are not protected.

The Defendant also cites a 1974 case (before the internet) and states, "whether fair or unfair - [editorial decisions on what to include or exclude from publication constitutes the exercise of editorial control and judgment."  This is not the same world and that "editorial control" has already been brought into the digital world and

---

[12] *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.* 487 U.S. 781 782 (1988)
[13] Notice is drawn to the difference in Autopredict terms between the Demonstrative Exhibits offered.

defined as an "algorithm". Defamation developed which considered the "weighing" of the factors built into the Algorithm is recognized. Thus, the *Miami Herald Publ'g Co. v. Tornillo,* 418 US 241 (1974) is archaic and almost wholely unintelligible in application to an internet Search Engine and online News by AI summation algorithm case.

Defendant also cites: *Jian Zhang v. Baidu.Com Inc.*, 11 Civ. 3388 (JMF), (S.D.N.Y. Mar. 27, 2014) ("In this suit, a group of New York residents who advocate for increased democracy in China sue one of China's largest companies, Baidu, Inc. (incorrectly named in the Complaint as "Baidu.com Inc."). Plaintiffs contend that Baidu, which operates an Internet search engine akin to Google, unlawfully blocks from its search results here in the United States articles and other information concerning "the Democracy movement in China" and related topics. (Compl. (Docket No. 1) ¶¶ 14, 22). The case raises the question of whether the First Amendment protects as speech the results produced by an Internet search engine. The Court concludes that, at least in the circumstances presented here, it does. Accordingly, allowing Plaintiffs to sue Baidu for what are in essence editorial judgments about which political ideas to promote would run afoul of the First Amendment.") In Zhang the question was "political ideas" and yet it illustrated Google's ability ia algorithm to completely exclude listings and otherwise drive traffic. This case is about "malicious categories" in the social scoring algorithm which "perpetuated defamation". It does this with misrepresentations, a two sentence publication containing no "helpful" factual information, refusing to update information It hosts, and the total exclusion of credible articles from a purported News Summation service.

The exclusion of articles breaks down into (1) articles that provide a rebuttal, (2) articles that provide proper context factually hence designed to guard against systematic false light. Within Google before general use of Artificial Intelligence and "Greedy algorithm" like coding searches were based upon objective factors.  But Google has expanded to the over 200 factor criteria which is due discovery.

In fact. Zhang clearly states to be news or a publication, the material must be "relevant information" and "helpful" to the searcher.  *Jian Zhang v. Baidu.Com Inc.*, 11 Civ. 3388 (JMF), 7 (S.D.N.Y. Mar. 27, 2014) ("The central purpose of a search engine is to retrieve **relevant information** from the vast universe of data on the Internet and to organize it in a way that would be **most helpful** to the searcher. In doing so, search engines inevitably make editorial judgments about what information (or kinds of information) to include in the results and how and where to display that information (for example, on the first page of the search results or later).  This case is from 2014 and recognizes "editorial decisions" while being decided on and published pre-Genitive AI.  And even before Autopredict in the search bar panel was even offered - yet making it clear - is the retrieval "relevant information" and "helpful to the searcher", which if not - same clearly is not a always considered a traditional Publication.

*See generally* Eric Goldman, *Search Engine Bias and the Demise of Search Engine Utopianism,* 8 Yale J.L. & Tech. 188, 192 (2006) (concluding that "search engines make editorial judgments just like any other media company"). In these respects, a "search engine's editorial judgment is much like many other familiar

editorial judgments," such as the newspaper editor's judgment of which wire-service stories to run and where to place them in the newspaper, the guidebook writer's judgments about which attractions to mention and how to display them, and Matt Drudge's judgments about which stories to link and how prominently to feature them. Volokh & Falk, *supra,* at 884; *accord* Benjamin, *supra,* at 1467-71. ")  Note is made that the development of AI which summarizes and orders news based on algorithms is very different from Matt Drudge's platform terming and posting of hyperlink decisions.  This is a "machine" coded and programmed to evaluate, critique and weight pre-programed "factors" which may or may not be "malicious" but are due discovery.  This is believed to allow weighted factors to be tested for the specific malicious and an intentional part of a Perpetuated Digital Defamation in this case and other situations which should be redressed and mitigated. The fact is other site algorithm programers have differences in weighing the factors.  And yet Google has a provable pattern of making money off its search engine advertising and that includes while driving negative light attention towards conservatives or otherwise individuals whose Christian and Natural Law worldviews are not in line with Its corporate-political agenda.

In the *e-ventures Worldwide, LLC v. Google, Inc. 2017,* more relevant and recent case - it was held:  "Defendant Google operates an Internet search engine and has been called "the world's largest media company" with approximately 70% of the United States' online search market and 90% of Europe's online search market. (Id.¶ 10.) The majority of Google's revenues are derived from its "AdWords" advertising program, through which consumers pay to have their websites ranked and

prominently displayed in Google's search results. (Id.¶ 11.) Links to the advertisers' websites are displayed at the top of Google's search results and each time a consumer clicks on one of the advertisements, Google charges the advertiser and makes a profit. (Id.¶ 12.)"

Also regarding "false information", see *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1269-70 (M.D. Fla. 2016) ("E-ventures obtained information indicating that on or about September 15, 2014, a third party with a personal vendetta against e-ventures caused Google to receive false information regarding e-ventures' websites. (Id.¶ 20.) On September 19, 2014, e-ventures was notified by Google that 231 websites owned by e-ventures were being manually removed by Google from all of Google's search results because they had been identified as "pure spam." (Id.¶ 21.) "Pure spam" is a term coined and defined by Google. "Pure Spam" is defined by Google as indicating that "Google has detected that some of your pages may be using techniques that are outside [Google's] Webmaster Guidelines. The site appears to use aggressive spam techniques such as automatically generated gibberish, cloaking, scraping content from other websites, and/or other repeated or egregious violations of Google's quality guidelines." (Doc. #78-1, p. 14.) When Google detects pages that it deems as "Pure Spam," it "applie[s] a manual spam action to the affected portion of [the] site." (Id.) The 231 websites that were manually removed by Google included almost every website owned by e-ventures, including "corporate" websites, brand new websites, and websites that could not have engaged in any activities which could possibly be classified as spam.

(Doc. #75, ¶ 23.) Over time, 365 websites of e-ventures' websites were removed from Google's search results. (Id.¶ 57.)")

Google has the AboveTheLaw article which is in fact "Pure Spam", a "cloaked attack" racially of him as an Irish-American (referred to as "White") linked to Plaintiff Trenton Garmon as part of Its Perpetuated Defamation.  This is a per se racial term which may be neutral but for term "bigot" and otherwise misrepresnetaion of an alliance in a case involving all "white people" therein being absolute race baiting. This and other false information remain while per *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1271 (M.D. Fla. 2016) such should have mitigating efforts and is actionable. "Google's "mission is to 'organize the world's information.' ""  We see the "organizing of the world information" being now "autoprompted" and linked to two sentence "articles" with nothing, but Pure Spam, and to now without redress or even repentance by Google.  Google also seeks to "skirt the agreement" matter claiming that it is not certain 'which agreement' Plaintiff references acknowledging that Google has a pattern of voluminous, "form agreements". This is also a basis for discovery being a dispute of fact, because Google has admitted in other litigation to a "Pure Spam" policy and now claims that no such policy is identifiable.  Just double-talk and due discovery for Google has created several User Agreements that are and were form contracts promising just as stated in sufficient "short summary" in the complaint.  Note it did not deny that a Pure Spam term existed only that one was not referred to by which Agreement given there are so many.

The Defendant inputs pride or a lack of sufficient self-identity in stating - "Garmon describes himself as a 'prominent civil rights lawyer'". In fact, it is noted that respected Journalist Brandon Mosely described Garmon in an Article as a Prominent Civil Rights Lawyer in April of 2021. There was no self-claim of such - and yet again miscontextualized. There is nothing wrong with guarding your property right of reputation to ensure the impact of your faith and life are properly considered. The Search Beast, turned AI and multi-panel "Algorithm Bot" of sorts states via Counsel cites - "First, the First Amendment bars any claim based on Google's selection and ordering of search results regarding Mr. Garmon." "Selection" of articles to exclude based on discriminatory or malicious factoring is not protected. Same is inaccurate to the extent that the facts purport. Yet not protected are false, untrue and defaming statements. The Defendant states in Its Motion - "Second, any claim based on third-party content is barred by Section 230 of the Communications Deceny Act."

The Defendant argues, "because the Complaint does not plausibly allege that Garmon has been defamed; as such, any claim for relief under Alabama law must be dismissed." The matter is in fact defamation and other tort and is due to be decided by a jury. The Defendant's own admission by law and fact is that "factors" are considered in the Algorithm choice which clearly may not include "malicious" or maliciously intended factors. Such is the essence of defamation when coupled with damages. In this action, the Plaintiffs are asserting a loss of significant revenue overall which in large part is linked in law to prospective clients literally making Plaintiff Trenton Garmon aware that a "Google search" was done and results not

related to professional services, but otherwise cause "her" to change her mind. There are multiple witnesses and from the testimony of the Pro Se Dad other factors of defaming damages to include being called "dangerous" while zero criminal charge has ever been made for a violent crime and Garmon the father has actually been the subject of police brutality no less than twice and a county deputy brutality once all on camera. These contexts regarding safety and reliability are in records and press releases of rebuttal which Google intentionally excludes de facto. The context of a "Drug Arrest" while excluding the rebuttal and or contextual press release which AL.com ran regarding "Prescription" legality is defamation.

The Plaintiffs are alleging negative articles are intentionally prioritized based upon malicious algorithm factors. The Garmon minors are real people with real friends and real teachers and real community church life which include real searches on Google on certain occasions. The misrepresentive, defaming, maliciously biased search engine results of Trenton Garmon are linked to the names of the four (4) minors listed. The negative and defaming effect in a misrepresentative light connected literally by hyperlink while remaining inaccurate and while intentionally excluding links to the suppressed articles, specifically the "Holy Water"[14] case, reflect

---

[14] Google also suppresses by algorithm design the philanthropic work of the Garmon family which includes literally serving without salary a mutl-racial, multi-socio economic congregation, thousands of ministry hours of service which are reported on, hundreds of hours of pro bono advocacy for the poor and disenfranchised and other charitable good works. These are suppressed despite their weight in "time of life" service and fake news, false witness accounts or false light is otherwise algorithm coded to have priority for whatever yet to be discovered reason(s). Garmon maintains the keyterms "Catholic", "white", "Christian", "pro-life", "American", "Republican", "Libitarian", "male" and other key terms both weighed in the algorithm and assigned to his Metatag are malicious and a "perpetuated defamation" by company coding design where same individuals and terms are not in step with Google's Social Scoring system.

in a defaming light upon the children because of the misrepresentations about the father - attacked to their name by - again - literal hyperlink.

Therefore, this Court should not allow Google to lump the at least three relevant services into one string of defensive arguments. Each service provides a separate displayed result(s) of sorts with unique algorithms. Claims exist, thus based upon both the General Search and News Summation Search; as well as based upon the Defendant's refusal to update the Knowledge Panel to indicate Annulled. On May 7, 2023 the Plaintiff Trenton Garmon requested of Google updates which was confirmed by email receipt of the Knowledge Panel update reuest. A request was also made by Santiago Leon who operates SLeon Productions - an online service boutique. Link removals to Spam disregarded and medical explanations disregarded while false information and attacks are given priority. Perhaps Google hates Roy Moore, a former client of Garmon. But prescription use of Cannabis is morally appropriate and a true light.

The Google Platform contextually in this case provides the General Public and Plaintiffs when utilizing Google - (1) a general search algorith based upon a simple "bar" search, (2) a news specific search or a news summation which is a different digital algorithm and (3) a Knowledge Panel which acts as a "Store Sign" or "Homeroom Chalk Board" or "General Bio" of an individual, entity, etc. These are three separate and distinct services, digitally. These separate and distinct three services have different algorithms and different levels of control, thereby. It should be noted that Articles like that of NY Mag referring to Garmon as "Nutty" for a basic

Defense of an accused who denied the allegations allows for "No Comments" to be posted in rebuttal and refuses to run any generalized response regarding the cultural practice of screening via parents before marriage.  Google hyperlinks this article. And Google hyperlinks a purported "article" which is a single line simply stating with a picture: "Stephanie Ruhle Shows How White Allies Are Supposed To Act By Live-Dragging Trent Garmon, Roy Moore's Lawyer[15] **Trent Garmon tried to come at Ali Velshi with some dog-whistle bigotry, but the co-host was having none of it.[16]"**  This is the exact concern of string code non-sense that is warned of online by legal experts and tech ethics bloggers.  No context, simply attacks in one to two sentence format and calling it "News" or an article.  Per *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1277 (M.D. Fla. 2016) (""[D]efamation... recognizes the concept that literally true statements can be defamatory where they create a false impression." Id.")

Zero "dog-whistle bigotry" could be imputed in a "white allies" case in this context as everyone involved with the underlying matter was "white".  This is a political agenda article Google grabs by way of Its webcrawlers because of the Perpetuated Defamation algorithm factors.  Intended to drive marketing and ad sales while casing a "false light" and "false impression" in a defaming manner.

Specifically see the AboveTheLaw.Com article which per *Sorrell* @ 564 US 552, the disseminated info to be deemed news must be "helpful" to a reader.  "White

---

15

https://abovethelaw.com/2017/11/stephanie-ruhle-shows-how-white-allies-are-supposed-to-act-by-live-draggi ng-trent-garmon-roy-moores-lawyer/
[16] Word-for-Word of a purported "News" article without Bold emphasis added.

allies" is not helpful to understanding a case involving all purportedly "white" people. "Bigotry" is not helpful when considering the interviewer is Muslim whose faith accepts child marriage and arranged marriages, while all the individuals involved in the actual case are "white" and purported Christians, thus not per objective academia believing it moral and right to engage in child marriage or arranged marriages. Thus the "Article" or "News" is neither accurate or helpful, rather is a complete spin to attack defaming of the Plaintiff.

Or in those regards - Google is both - providing a service of both a search and news summation. Which lawfully one bears responsibility if both are provided. And separate torts can be proven. Plaintiffs maintain both the General Search and News Summation Search have intentional complete exiled results of a "Holy Water" case and other positive professional results. This is per se, de facto bias in some regard caused by the algorithm. Only after discovery will there be sufficient light determine the "why" was the "Holy Water" case not listed in either the General Search or the News Summation Search - when it is listed on all other Search Engines. Per se. For clarity as well "Autopredictions"[17] claims have not been made in this litigation but pointed to as indicators of factors already in the algorithm. Yet there is a positive and negative spiral effect in how these Data Search Engine Giants operate their platforms which includes "autosuggestion" of terms after a persons name and other manners in which implication of light is projected. And the user then guided by the lists of search result responses ordered by the algorithm which has certain acknowledged

---

[17]https://www.theguardian.com/technology/2022/jan/24/google-warns-of-devastating-impact-if-court-ruling-on-defamatory-hyperlinks-not-overturned

criteria.   While litigation over negative light "autosuggestion" has been filed and prevailed in other jurisdictions, this action is over the algorithm and Knowledge Panel controls.   It is indisputable that search after search has been performed and a false, defaming light created a downward spiral of terms which have only recently and by press release been able to reasonably be combated.   Yet clients, ministry opportunities and even an attorney in open Court referred to a "Google search" and in the context of the situation an adult, reasonable mind knowing the full context would find the search created a damaging defaming effect.

Therefore, this Court should not allow Google to lump the at least three relevant services into one string of defensive argument, albeit crafty.   This is a "new Google" and multiple functions/services exist, not merely a search Bar with a single column of search results objectively displayed from an objective crawling of the web based on "one factor". Each service provides a separate displayed result(s) of sorts with unique algorithms.   Google controls the 'secret social factors' which it weighs using malicious and discriminatory factors. WHEREFORE, premises considered the Plaintiffs do file this Memorandum Brief in Support of their Response to the Motion to Dismiss and in conjunction with Plaintiffs' Partial Motion for Summary Judgment. Done this the 23rd day of January 2024.

s/ Trenton Garmon
TRENTON GARMON

**CERTIFICATE OF SERVICE:** I hereby certified that a copy of the foregoing and all filings have been served upon the Defendants by electronic mail and U.S. Mail postage prepaid this the date of filing.

**James P. Pewitt, Esquire**
James P. Pewitt LLC
2 20th Street North, Suite 925
Birmingham, Alabama 35203
Telephone: 205-874-6686
jim@jamespewitt.com

**Eric P. Schroeder, Esquire**
Bryan Cave Leighton Paisner LLP
1201 West Peachtree Street, NW
One Atlantic Center, 14th Floor
Telephone: 404-572-6600
Facsimile: 404-572-6999
eric.schroeder@bclplaw.com

*s/ Trenton Garmon*
TRENTON GARMON

# IN THE CIRCUIT COURT OF ETOWAH COUNTY, ALABAMA
# IN AND FOR THE SIXTEENTH JUDICIAL CIRCUIT

Trenton Rogers Garmon,                    *
    Plaintiff & Affiant,              *
                                      *
V.                                        *          Case Numbers:
                                      *          4:23-cv-01525-CLM
Google LLC & Alphabet Inc.                *
doing business as "Google",               *
                                      *
    Defendants.                       *

## DEMONSTRATIVES & HYPERLINKS

> Plaintiffs have historically used defamation, privacy, and intentional infliction of emotional distress to vindicate their dignitary interests. But fifty years ago in New York Times v. Sullivan, the Supreme Court reimagined these private law torts as public law causes of action that explicitly privileged speech over dignity. This Article claims that Sullivan was a misguided attempt at alchemy, manipulating state action doctrine to create more of a precious commodity—speech—while preserving a tort channel for the most deserving plaintiffs. In Sullivan the Court departed from its usual practice of narrowly defining the relevant state action in constitutional challenges to private law matters. Instead, it defined state action to include not just the isolated verdict being appealed but the entirety of the private law that produced the questionable verdict. This approach aggrandized the Court's authority to "fix" private law in the dignitary tort arena, where it seemed to fear that insular communities could chill important news coverage by imposing parochial norms onto the national community. The Court used its enhanced remedial authority to design a national constitutional common law of dignitary tort. In the quasi-statutory scheme that emerged, the Court attempted to strike an ex ante balance between valuable speech and wrongful behavior by conditioning liability on different scienter requirements for different categories of plaintiff. But the Sullivan project is rapidly failing. Operationally, insignificant but injurious speech such as revenge porn has flourished under the Court's brittle categorization matrix. Conceptually, the private law message that speakers owe some duty to those they discuss has been supplanted with a public law message that they have no duty of care. And instrumentally, enhanced speech protections have resulted in more soft news about celebrities and less hard news about government. Nevertheless, the Court's original goal—barring the imposition of insular community norms onto the nation as a whole while preserving a legally protected interest in individual dignity—is important and achievable. The rulemaking of the Sullivan cases should be retired in favor of a general constitutional principle barring judicial enforcement of verdicts that impose local community norms onto the national community. This is precisely the kind of strong but flexible constitutional guidance the Court would have rendered in Sullivan if it had followed its usual state action approach.

*"The Court's original goal - (In NY Times v. Sullivan) - barring the imposition of insular community norms onto the nation as a whole while preserving a legally*

*protected interest in individual dignity - is important and achievable." 17 U. Pa. J. Const. L. 1117 (2014-2015) - Tort, Speech, and the Dubious Alchemy of State Action*

*"The Court's use of Sullivan as a springboard for horizontal overreaching into the lawmaking function. The decision began the process of transforming defamation, privacy, and inten- tional infliction of emotional distress ("IIED") from private law stress- ing compensation for injury to public law stressing speakers' rights. This Part begins by describing the constitutional common law rules promulgated by the Court. These rules attempt to balance dignity and speech by creating a matrix of plaintiff categories and culpability categories and assigning different constitutional protections to each category. The goal of the scheme was to protect democratically rel- evant speech while preserving a right to dignitary compensation for insignificant or exceptionally injurious speech. 17 U. Pa. J. Const. L. 1117 (2014-2015) - Tort, Speech, and the Dubious Alchemy of State Action  See generally Anne Bloom, The Radiating Effects of Torts, 62 DEPAUL L. REV. 229 (2013) (identifying how tort suits can influence public behavior)*

*https://casetext.com/case/pittsburgh-press-co-v-human-rel-commn#p386*

*https://casetext.com/case/e-ventures-worldwide-llc-v-google-inc-6*

*https://casetext.com/case/jian-zhang-v-baiducom-inc-1*

*https://supreme.justia.com/cases/federal/us/418/241/*

*https://casetext.com/case/dreamstimecom-v-google-llc*

*https://casetext.com/case/search-king-inc-v-google-technology*

*https://casetext.com/case/dowbenko-v-google-inc*

*https://casetext.com/case/langdon-v-google*

*https://casetext.com/case/parker-v-google*

*https://casetext.com/case/novak-v-overture-services*

*https://www.law.cornell.edu/uscode/text/47/230*

_https://en.wikipedia.org/wiki/Google_litigation_

_https://supreme.justia.com/cases/federal/us/418/241/_

_https://www.theguardian.com/technology/2022/jan/24/google-warns-of-devastating-impact-if-court-ruling-on-defamatory-hyperlinks-not-overturned_

Done this the 23rd day of January 2024.


_s/ Trenton Garmon_
TRENTON GARMON

Rainbolds, AL 35901

United States District Clerk
1729 5th Ave. N, #140
Birmingham, AL 35203






