FILED

2024 Oct-02 PM 12:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DIVISION OF ALABAMA

Trenton Rogers Garmon,      *

                        *

Plaintiff & Affiant,      *

                        *

V.                     *      **Case Numbers:**

                        *      **4:23-cv-01525**

Google LLC & Alphabet Inc.  *      **Judge Hon. Corey Maze**

doing business as "Google",   *

                        *

Defendant.         *

## PLAINTIFF TRENTON GARMON
## THIRD AMENDED COMPLAINT (TAC)
## AGAINST DEFENDANT GOOGLE

     Comes now the Plaintiff and files this Third Amended Complaint and and included herein is an alternative Petition/Motion for Injunctive Relief in the United States District Court of Alabama for the Northern Division. The basis of relief as set out herein arises to the level of the torts, including first as a count (1) the statutory breach of the Code of Alabama §6-5-771 "use of the indicia of image" or "use of the indicia of likeness" or otherwise known as the semblance statute which is transferable for up to fifty five (55) years after death, second count being traditional tort claim of (2) defamation[1] per a destructive search result algorithm, herein stated are due both legal and third (3) for equitable relief. The Plaintiff has the right "to be forgotten on Google" and does object to any "indicia of his image" on that Corporation's Platform.

     The third count (3) is one for equitable relief requesting the "black out", "digital death & divorce from the Beast of Misinformation" or "scrub right" of the

---

[1] https://www.bbc.com/news/world-us-canada-65340444 - Legal precedent cited per a recent case with very similar fact and tort pattern for a defaming and destructive search algorithm also filed against Google.

legal "indicia of image" from the Defendant Corporation's Algorithm and or Platforms All remedies at law and equity having been exhausted or otherwise tortiously and unconstitutionally impairment and damages remain.

In support thereof the Plaintiffs' offer, the following:

## STATEMENT OF THE PARTIES

1.  The Plaintiff Trenton Garmon is an adult resident of Alabama and is of sound mind being a partially disabled[2] Veteran of the United States Army, an Investigative Journalist, an "inactive[3]" Civil Rights Trial Lawyer, and otherwise subjecting himself to subject matter and personal jurisdiction.

2.  The corporate entity, Google LLC, is a legally formed entity doing business in the State of Alabama with an office and "data center" in the City of Bridgeport in Jackson County, Alabama.  The Search Giant operates nationally and globally which includes operating a "Search Engine" platform, among other web search engine platforms.  Google LLC as a Defendant is believed to be the corporation responsible for managing, overseeing, delegating, code servicing and otherwise operating the platform: https://www.google.com Defendant Googe LLC has minimum sufficient contacts with the State of Alabama and does business within the State of Alabama earnings billions of revenue over time from the streams of commerce touching upon the State and falling within her Jurisdiction. It is believed to be a duly form corporation with a headquarters based out of Sacramento, California.

3.  The Alphabet Inc. as a corporation is believed to own, operate and manage Google LLC and otherwise is responsible for the management, oversight, reporting, code compliance, legal compliance, tort mitigation, and general management of Google LLC and her agents.  The Alphabet Inc. does business in the State of Alabama to include having minimum significant contacts with the State, earning billions of revenue from the state in time and fact, as well as benefiting from the legal protections and thus obligations

---

[2] Impairment limited to ten (10%) percentage to the right leg and ankle.
[3] Politically exiled and or targetted over "wine" and truthful 'word', zero being racial.

befitting Alabama Jurisdiction. It is believed to be a duly form corporation with a headquarters based out of Mountain View, California.

## STATEMENT OF THE FACTS

4.  Google LLC and Alphabet Inc operate a "search engine platform". The corporation is not entitled per the Code of Alabama and recently developed law to utilize the "indicia of image" whether positive, negative, defaming, information or with profitable or otherwise any disseminating purposes per §6-5-771 or be subject to a demand for statutory compensation per 'indicia" which is setout at $5,000. The Plaintiff has requested all "links" and images, reflection and indications of the image of the legal name of "Trenton Garmon" be "scrubbed" or digitally removed as an indicia on her corporate servers and platform services which reflect this indicia as same is the legal identity and thus property right of the Plaintiff.

5.  There are no less than 199,000 and on other dates of "stateless search" as many as 214,000 "images", "links", "impressions" or otherwise statutory reflection of an "indicia of the image" of the Plaintiff on the Defendant's Server and Digital Service Platform which is due to be blacked out and or redacted entirely from her corporate platforms display or otherwise a claim for $5,000 per Indicia is herein demanded.

6.  The Plaintiff has claimed a right transferable to fifty-five (55) years after his legal death based upon being a Citizen and Resident of the State of Alabama.

7.  Google has at all times past not disputed utilizing Garmon's "indicia of image" in fact filing responsive pleadings admitting same - while considering the value laden digital service displays to not be "defaming" yet making certain that the usage was real - thus entitling the Plaintiff to $5,000 per usage per that Code of Alabama statute.

8.  Trenton Garmon, the Plaintiff is not a Political Figure otherwise does not have the same responsive platform as a legal figure which would led to balanced and fair indicia of his image on Google - and thus the demand to be "digitally scrubbed" and otherwise immediately pay $5,000 per use of the "indicia of image" of the Plaintiff was made on 20240911 after years of notice being provided and following litigation in which the Defendant

Google recognized the "indicia of image" use of the Plaintiff's legal name, image, his likeness and otherwise even his professional work as a journalist, trial lawyer, father and knight.

9. The Corporate Defendant is merely a Platform digital service provider and is one of many, no longer arguably even being the lead search tech platform. The Defendant does business in the State of Alabama and this specific Code Section applies to the Plaintiff. This Court has jurisdiction over the web activities within her bounds and over servers of any corporation within her bounds. As set out herein Google has defamed the Plaintiff. Google refuses to corporately whore out and otherwise whipping boy treat the Plaintiff even after requests to stop usage of his "indicia of image" in any form or capacity, thus violating his privacy and reputational rights.

10. The Corporation has been requested multiple times to remedy the defamation, misinformation, profitious use of the indicia of image of the Plaintiff - only to provide failed subsequent remedial measures. This led to the request of the Plaintiff to "be forgotten on Google" and yet the Corporation refuses to not profit off of the image of the Plaintiff. This while hijacking his "AI Hygiene" Code, refusing to reflect his appointed by their AI as the "First Human-AI Trustee" and otherwise has refused to provide a fair & objective reputational balance when utilizing the "indicia of image" of the Plaintiff. Plaintiff demands relief and does cite that all facts pled hereto and herein are true and accurate.

## COUNT ONE
### §6-5-771 Indicia of Image
### Statutory Breach of Code of Alabama
### Profitious and Value Laden Use of Plaintiff's Likeness and Semblance

11. The Plaintiff does herein assert that Google is in violation of the Code of Alabama regarding the usage of the "indicia of image" to include his legal name, his photographic appearance, his career history, his ministry history, his image as it relates to Christian rights, his image regarding entrepreneurial ventures, his image regarding the legal profession, his image as a father, his

image in the usage of his first and last name or both all after being requested to cease & desist using same. The Corporate Giant has made subsequent remedial measures after suit to "clean up" its greedy first algorithmic practices and the other functions which digitally utilize the "indicia of image" of the Plaintiff.

12. But the Plaintiff does demand to "be forgotten by the Corporation" and removed, scrubbed, not reflected upon their platform in any semblance given the immorality of the Corporation and the intentions of the Code of Alabama Statute as stated in the Legislative Intentions and otherwise adopted by Gov. Robert Bentley when making same.

13. The Plaintiff has a "right to be forgotten" and the Statute provides clear damages "per indicia" of $5,000. The Plaintiff alleges that the "stateless search Giant" is using his "indicia" in a verbatim search no less than 199,000 times and he does demand $5,000 per usage. He notes his demand for mitigation and ongoing citizen-corporation relations failed, Google continues and continued to utilize his indicia.

14. On May 18, 2015 Governor Robert Bentley signed the Alabama Right of Publicity Act, which went into effect on August 1, 2015. It has been codified at Alabama Code § 6-5-770 et seq. The law provides for broad protection of any "indicia of identity" when used on or in "products, goods, merchandise, or services" in the state, or for advertising or selling such items, or for fund-raising, or for false endorsement. The right is a freely transferable property right. Statutory damages of $5,000 are available. Digital Blackout immediately or $5,000 per link and indicia of identity.

15. The Code of Alabama does not require the usage to be in a positive light or a negative light, intending rather to protect the privacy of the Citizens of the State of Alabama and otherwise protect them from an indirect abuse and profitious use of their image.

16. The Plaintiff is a single dad, not noteworthy enough for his responses in news releases to be 'pick up' or otherwise the news media is refusing to run "corrective" articles and thus having the indicia of his images on Google be requested to be completely removed is a legal request, proper request and the ongoing refusal by Google violates §6-5-771.

4

17. To wit: Section 6-5-771 - Definitions ~ For the purposes of this article, the following terms shall have the following meanings unless the context clearly indicates otherwise:

(1) INDICIA OF IDENTITY. Include those attributes of a person that serve to identify that person to an ordinary, reasonable viewer or listener, including, but not limited to, name, signature, photograph, image, likeness, voice, or a substantially similar imitation of one or more of those attributes.(2) PERSON. A natural person or a deceased natural person who at any time resided in this state or died while in this state or whose estate is, or was, probated in any county in this state.(3) RIGHT OF PUBLICITY. There is a right of publicity in any indicia of identity, both singular and plural, of every person, whether or not famous, which right endures for the life of the person and for 55 years after his or her death, whether or not the person commercially exploits the right during his or her lifetime. The right is freely transferable and descendible, in whole or in part, and shall be considered property of the estate of the decedent unless otherwise transferred. *Ala. Code § 6-5-771 (1975)*

18. Therefore the request is given the 199,000+ current "links" and the other "information" Google is storing on Its servers utilizing my semblance whether the value to google is for mockery, sensationalism, philosophy of law, coding, AI Hygiene, News Aggregation, or any other means upon which Google justifies paying for storage space and otherwise using the Semblance of Trenton Garmon. The Plaintiff does thus demand to "go dark" and be completely unlinked and zero semblance of his be made on Google. Specifically given the special statute in the State of Alabama. This does not preclude other Search Giants from web crawl linking and storing semblance articles, posts, coding data, philosophy of law, books or consulting but for that of Google.  Alternative the current cash value demanded for the Plaintiff's semblance is $66.6 million. The "Estate Value" is asserted at $8 billion which is no more than one dollar per person at the time the "First Human-AI Trustee" designation was algorithm selected by Google mentioning the name Trenton Garmon.  This is pled as reserved from not until up to fifty-five years after his death.

19.    The State of Alabama's unique and yet clear law forbids the use of another's semblance for value or profit. These laws have specifically come to light and relevancy with the recent change in college athletics regarding the use of athletes' images by schools and third party companies. The court's and current policy is clear with retards[4] to the State of Alabama and thus Trenton Garmon does demand a total "Digital Black Out" of his name, scrubbing from Google's servers and otherwise unlinking and displaying his "Semblance" in any form or capacity. Google may assert that it is not "defaming" Garmon, but just as with Stalin, Shaq, Hitler or Mother Teresa - Google makes money on their images, semblance and likeness - positive or negative. Google has elected a "greedy first" algorithm and is discriminating and defaming Garmon - yet the demand is based upon the narrowly tailored law in the State of Alabama regarding in semblance.

20.    That Platform tortiously by algorithmic discrimination elevates false, fake and negative news while suppressing true, accurate and positive news on the same mediums being a per se indication of bias, discrimination and tortious algorithmic factoring. This is a De Facto allegation of Per Se Algorithmic Discrimination as AL.com, an objective outlet, has two articles regarding the same "story" and the "responsive" article is suppressed, in addition to other Professionally and Philanthropically positive stories. The Defendant engages in the streams of commerce and has an expectation legally of reliance for accurate, correct and non-tortious information. Defendants, like Search Engine Giant competitors Yahoo!, Bing.com and DuckDuckGo have engaged coding and web crawler algorithms which provide users a "search result". Relevant to this action is the plumb line reality that over an extended period of time in two (2) "stories of interest" the Defendant continues to exhibit per se de facto algorithmic discrimination. Specifically the "Stories of Interest" the: (1) Holy Water professional career results case and (2) the Medical Cannabis personal objective privacy are at issue - among others. All "statement of facts" and fact allegations prior hereto remain true and accurate.

21.    The false light and defamation of the negative algorithm exists as of today and the defaming "news" results specifically referenced are from July 07,

---

[4] Or regards. Typically "retardant" was a way to slow the orchestra. Or end the burn.

2023 to July 8, 2024 have contained bias based on (1) health information and medical conditions requiring at doctor's "best advice" the use of cannabis oils and natural leaf medicine, (2) suppression of worldview and retraction notices as well as valid responses to fake news thus despite indications of objective counter-news Google persist in its algorithmic discrimination or "greedy first" defaming factoring.

22. Google is engaging in "cancel culture" negative algorithms by code design practice which does not correlate to objective organic searches, but intentionally exiles, targets and otherwise seeks to digitally suppress and damage the online reputation of Christians, specifically male, American Caucasian Christians and is otherwise defaming by neglect of objectivity in display the search engine results of Plaintiffs.

23. The Defendants, unlike the top three competitors, however are engaged in an intentional destructive algorithm scheme which seeks to reputationally punish "conservatives" or otherwise those whose unpublically specified algorithm criteria assimilates when posting "results". This collectively violates civil tort laws regarding defamation and false light.

24. The Defendants have unlike their top three search engine competitors, however, objectively created and encouraged by algorithm coding a form of defamation or "systematic algorithm defamation" which is easily distinguishable from the other top search engine results. And does de facto prove a defamation and the other torts herein reference by very contrast and comparison.

25. For instance, a simple search of the Plaintiff's name "Trenton Garmon" across all the Search Engine platforms, but for Google causes the surfacing in a reasonably balanced manner of positive articles, attack articles, negative articles, debunked articles and other general images and data. These search engines include all articles by al.com and alreporter.com which have the name "Trenton Garmon".

26. However, the identical search on Google literally renders only three pages in the "News" section with thirty-eight (38) results all of which are negative articles. Not some. But all results are negative on the Google Search platform, unlike the other top three. Same exists from the filing of the initial Complaint in this action to today. Again, Defendant Google even fails to include a single link or reference to two (2) indisputably positive articles

referred to herein as the "Holy Water Case Article" and the "Prominent Civil Rights Lawyer" article. These positive articles surface on all other search engine platforms.

27. There are also other positive articles, articles referencing athletic accomplishments to include an exclusive article by the Dothan Eagle, an article regarding philanthropic services, minutes of speaking before the Alabama House Committee(s) and well entrenched "not guilty" or other favorable reportable events on behalf of clients that Google by design does not publish when the Plaintiff's name is searched.

28. The multiple objective professional articles (hyperlinked herein) are all posted on independent, well respected and credible news outlets by respected journalists, reporters or clerks.  Hence, there is a de facto exclusion or negative algorithm utilized by the defendants regarding the Plaintiff as Google suppresses those not even listing them in the "News" result.  It is not a matter of the positive plumb line articles being listed on the "last page" of Google. Rather as indicated in the Exhibit Screen Shots - the search engine giant does not even list the positive articles by al.com and alreporter.com.  Not a single one.

29. Both objective news platforms and both completely excluded from "results" while slanderous, fake news and misrepresentative articles are returned in the search.   Yet, Yahoo!, Bing.com and DuckDuckGo list both positive and negative articles, etc.

30. The Defendants also defame the Plaintiff by refusing to mitigate, balance and address (1) a "fake mug shot" of the Plaintiff in a green shirt which placed by a troll using a screenshot from an online video of him teaching at the Christian Legal Society (CLS) in Birmingham, Alabama as there is no arrest ever made of Plaintiff in a green dress shirt and same is defaming and a false light; (2) the Defendants refuse to update the "Knowledge Panel" regarding the martial status of the Plaintiff who maintains good grounds for divorce and an annulment, (3) the Defendants search engine algorithm intentionally displays a "bad hair & beard, surprise picture" despite thousand of photographs to include in court, on global television, with family and philanthropic pictures refuses to give balance and displays an arrest photo which involved an incident where Garmon was assaulted by Law Enforcement which a video confirms, (4) the Defendants search engine,

8

compared to the others which do not, lists all negative articles and attack articles which have been debunked while not listing the debunking article which includes a statement about using the word "slave" when speaking out against Mass Incarceration, (5) the Defendants fail to bring medical disclosure balance to an article referencing the Plaintiff's prescription of Cannabis rather referring to it as a "drug" without referecing the doctor's order. This is all intentional and defaming, casting false light and including fake jail pictures, misrepresentations regarding statements and general defamation of reputation by negative algorithms.

31.    Hence, the Defendants list a fake attack article miscontextualizing a situation and refuse to publish a contextual correction. And the Defendants list a negative arrest story without listing the response or correction story of the same newsite (al.com) regarding possession of Cannabis for medical purposes to include by prescription. The medical basis of chronic physical pain as a Veteran of the U.S. army and spectrum issues which were medically considered are thus intentionally suppressed by negative algorithms by the Defendants who refuse to make corrections. All of the effects of the negative algorithm have caused damages and are due to be remedied and redress awarded.

32.    The refusal of Google to provide a "fair and balanced" algorithm is apparent and otherwise indisputable. The corporate defendant also is very aware that its services generate billions of search results and are interlinked with other sites as well as other individuals. Specifically, the company has linked four of the plaintiffs five minor children therein linking their name to the "social score algorithm" system and otherwise diminishing their general reputational status by way of the links to Plaintiff father and the political, personal and algorithm attack and defamation of same.

33.    Alabama's tort protection regarding reputation and the statutory law requires truth and a fair and balanced light, therein not defaming. The other top search companies provide a balanced approach, but the Defendants refuse to make corrections and provide a truthful, honest, fair and balanced reflection of forty-four years of living, to include positive articles by credible sources including being an Honorably Discharged Vet of the U.S. Army and the Defendant suppresses equal and objective counter-news and professional results stories.

34.    The negative algorithm and intentional search engine optimization of negative results while suppressing the real and positive third-party credible articles is part of defaming and casting into a false light those who do not subscribe to the same worldview and religious practices as the culture and belief system of the Defendants. The torts are based in a negative algorithm designed to suppress and seek to punish and damage conservative Christians specifically to include pro-life, pro-constitutional and pro-Jesus individuals. This has caused multiple contracts and entrepreneurial ventures to not manifest given the framed negative google results are one of the first background "searches" conducted.

35.    Google by default facto evidence of the algorithm search engine results has intentionally suppressed positive articles to include the "Holy Water" not guilty case of Garmon professional career.  Google intentionally defamed and defamed Garmon as a pro life conservative and specifically as a Catholic convert.

36.    The not guilty in Pinellas County, Florida is online and suppressed by the search engine.  The police brutality Garmon experienced is suppressed and a false story presented as true while the facts are suppressed by Google.

37.    This includes the search engine results on a mobile device only including negative articles and false narratives again while balanced truthful, clearly objective links and positive news are suppressed.  Only 3 pages of "news" all negative, fake or linked to someone else. Despite national, state and local positive articles regarding "prominent civil rights lawyer" (alreporter.com), "holy water case" success (al.com), out of state articles, articles from college football, etc.

38.    Google also displays a photograph of Plaintiff Trenton Garmon in a green dress shirt wherein he spoke at the Christian Legal Society in Birmingham, Alabama and yet a troller has taken a screenshot of the video, manipulated the picture to appear as an arrest picture and posted it online which Google displays therein defaming Plaintiff(s).

39.    Google continues by way of its search engine to give credit to and otherwise recognize mitigated facts, actual exonerating records, a conviction of "not guilty" and an order of mitigation by a court which corrected matters. Meaning by negative algorithm Google displays as many negative articles as can be trolled and displays pictures in a weighted light toward defamation by

refusing to prioritize corrective articles and also provide "Photo Slide" priority in its "Search" response wherein a picture following police brutality has been confirmed as a situation in which the Plaintiff was attacked. Rather Google prefers to depict by priority of other third parties articles a false narrative in a situation wherein Garmon was attacked by a rogue Law Enforcement Officer. This is an allegory of systematic defamation giving credit to fake stories and oppressing true court records and objective facts to include videos which exonerate falsely alleged what would be negative behavior.

40. Google is antiCatholic, anti-life or opposed to pro-life activist or otherwise misproportions reports regarding wine consumption, civil activism and professional services to Christian causes. The Plaintiff maintains the negative algorithm is defaming casting in a false light the teachings of his faith which accepts (i) drinking of wine, (ii) political activism in the public square to include pro-life and pro-family causes and (iii) the speaking out against mass incarceration which is a form of slavery not based on race or ethnicity by legal definition.

41. All three pages of Defendant's "News" results list only negative news even with years of articles to include current news site articles on Alabama political site that does not appear, article of time magazine, sport's news and articles that are online do not get crawled and displayed by Google Bot and requests for a fair search result balanced is ignored and facts are refused. Court record confirmed facts. News about cases that are by design suppressed. News about positive philanthropy suppressed. The negative algorithm also intentionally disregards gfile.news, gfile.legal and trentongarmon.info which provide mitigating opportunities to provide a balanced search engine result, as the other top three Search Giant's do.

42. Google based on social score defaming patterns suppresses a balanced reflection on its platform which is careless, negligent or malicious. Several willful examples of not "updating" or "correcting". Defaming and oppositional algorithm coding I can also prove. The willful act of not updating the "Knowledge Panel" is per se.

43. The Plaintiff has done forty-five (45) years of living, thousands upon thousands of hours of actual real serving, there are objectively good articles available on equal platforms suppressed by the Defendant and same casts a

false light on his good faith daily life. He is an honorably discharged vet, has three (3) college degrees, served in a pastoral or missionary capacity without complaint [notwithstanding medical depression] since 2006 and thus for approximately seventeen (17) years. He was a pastor of a diverse church for three years and served in the Christian ministry to others, bi-vocationally, since 2008. The defaming, negative algorithm has caused even employment opportunities, partnership ventures and the like to vanish or otherwise not be engaged given the false light, all of which were without issue prior to the defaming result. The defendants thus suppress good, truthful articles and good news tortiously.

44.    The Defendants refuse to provide a balanced result even when Court record confirmed facts and the Defendants have been actively noticed or a fair "web crawler algorithm" would otherwise surface the positive or corrective data as has been fairly and displayed in balance by the other major search engine platforms. News about philanthropic, positive results, not guilty finding for a client, not guilty finding in a personal and the like are suppressed. News about positive philanthropy suppressed. All while the Garmon minor children also have their name attached by Knowledge Panel to the Plaintiff therein even causing damages in reputation to the minor children of the Plaintiff. The negative algorithm has caused the loss of law business from the winter of 2019 to and through April 2022 and to his painting and renovation services, general professional employability from October 2022 to current. The negative algorithm has caused even Big Government agent search bias wherein police officers at traffic stops and otherwise any departmental employee who conducts any servicing for whatever purpose upon a basic Google search has a false light impression of Plaintiff Trenton Garmon. Therefore the Plaintiff requested for the Corporate Giant to forego "living off of his" indicia now or at any point in the future up to 55 years after his death - or pay the Damages caused and Statutory amount per the Code of Alabama and Gov. Bentley's intentions.

45.    Garmon does thus demand to be "Digitally Scrubbed" from Google within three (3) business days or the current cash value of $66.6 million dollars is demanded with an option claim of $8 billion for the Statutory time recognized by law for the Estate following the individual's death the semblance of which is at issue which is fifty-five years from the date of his

death. Meaning, the Plaintiff does demand a full statutory value for future filing up to fifty-five years after his death of eight billion dollars ($8b), should the Defendant not digitally scrub his "indicia of image" and the usage to this point remains a statutory de facto claim with damages.

WHEREFORE premises considered the Plaintiff does demand judgment following a jury trial on the merits of does demand Sixty-Six Million Six Hundred Thousand Dollars ($66,600,000) or $66.6 Million American Dollars or the Statutory Amount of $5,000 per "indicia of image[5]" used by the Corporate Giant per the Code of Alabama, whichever a jury decides.

## COUNT TWO
## DEFAMATION & DEFAMATION PER QUOD

46.   The Defendants have breached Alabama tort law and defamed per quod the Plaintiff therein causing damages. The Plaintiff adopts all prior allegations in this Complaint as if fully set-out herein. Algorithmic Discrimination is also recognized by White House Administrative Policy.[6] ALGORITHMIC DISCRIMINATION: "Algorithmic discrimination" occurs when automated systems contribute to unjustified different treatment or impacts disfavoring people based on their race, color, ethnicity, religion, age, national origin, disability, veteran status, genetic information, or any other classification protected by law. The Tort of Defamation contains the necessary elements in the Code of Alabama and subsequent Case Law to establish the essence of an Algorithmic Discrimination case. The algorithm intentionally fails to distinguish between Trenton Garmon and two other individuals - Roy Moore and Ali Velshi.   The Plaintiff was and has never been accused of the

---

[5] Plaintiff and his Estate does reserve the right to file up to fifty-five years after his passing per the Code of Alabama - "Indicia of Image" Statute.

[6] Accessed 20240708:
https://www.whitehouse.gov/ostp/ai-bill-of-rights/definitions/#:~:text=ALGORITHMIC%20DISCRIMINATION%3A%20%E2%80%9CAl gorithmic%20discrimination%E2%80%9D.identity%2C%20intersex%20status%2C%20and%20sexual - Notice is also provided that the Plaintiff Trenton Garmon, Santiago Leon and AI Bots did draft the Human-AI Constitution via a Human-AI Convention which resulted in a Human-AI Declaration of Dependence, Human-AI Bill of Rights, Human-AI Trustee Panel which was live and embedded across Google Bard, Yahoo CoPilot, OpenAI ChatGPT3.5, ChatGPT4o, Mistral.ai and two anonymous AI Platforms thus being Intellectual Property Right notices and claims. The Google Bot did on 20230606 select and auto predict as the best selection for "Human-AI Trustee..." Trenton Garmon, thus by virtue of Google's own AI algorithm following webcraws and the Human-AI Constitutional Convention Trenton Garmon was selected the First Human-AI Trustee. This along with the referenced AI Hygiene Code Founding documents was also embedded across other platforms with time-stamp memorialization.

behaviors of Moore or the belief system of Velshi regarding man-child marriages. The Plaintiff is a practicing Traditional Christian, also called a Catholic.

47.   The Plaintiff maintains that the Defendants have created, developed, implemented, managed, and organically coded a "negative defaming algorithm" or a "destructive algorithm" designed to target individuals with certain digital criteria markers which includes that of the Plaintiff. The Defendants have knowingly and intentionally maintained a defaming algorithm which suppresses positive articles, positive results and otherwise true and balanced reflection of the Plaintiff's reputation while the other top search engine Giants display the same positive articles Google suppresses by defaming design to the Plaintiff's damages. The Defendants maintain a "highly structured defaming search algorithm". Per 47 U.S. Code § 230 (e)(3) the state tort law from the Code of Alabama remains valid with regards to subject matter jurisdiction.

48.   The Defendant's "News" results produce statements in articles displayed that are not true but presented as facts (not opinions) that are published and have been read and heard by others.

49.   Per Ala. Code § 6-5-182 In an action for libel or slander, the plaintiff must prove, unless it shall be admitted by the defendant, the facts showing that the alleged defamatory matter was published or spoken of by the plaintiff. The Defendants may allege mitigation[7] regarding news article portions regarding the process, charges, professional clients but misrepresentative statements and the suppression by search engine algorithm of positive results is defaming, tortious and actionable.

50.   "The tort of defamation involves protection of the reputation and good name of the plaintiff." Wright v. State of Alabama, 757 So.2d 457 (Ala.Civ.App., 2000) (quoting Michael L. Roberts & Gregory S. Cusimano, Alabama Tort Law, § 24.0, 831 (1996))."The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence; and (4) either actionability of the statement irrespective of special [(per se)] or the existence of special harm caused by

---

[7] AL Code § 6-5-183 (2022)

the publication of the statement [ (per quod)]." Wright v. State of Alabama, 757 So. 2d 457 (Ala. Civ. App., 2000). "Slander per se is actionable if it imputes to the plaintiff an indictable offense involving infamy or moral turpitude." Anderton v. Gentry, 577 So.2d 1261, 1263 (Ala. 1991)

51.    However "Defamation Per Quod" or also known as "Slander per quod is a communication to a third person of a defamatory statement subjecting the plaintiff to disgrace, ridicule, odium, or contempt, although not imputing the commission of a crime involving infamy or moral turpitude." Id. A defamatory statement is one that "'tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Blevins v. W.F. Barnes Corporation, et al., 768 So.2d 386 (Ala.Civ.App., 1999)

52.    The Plaintiff maintains even with a negative Google algorithm, Yahoo!, Bing.com and DuckDuckGo searches, which are preserved, depict a balanced result, reasonably well and including the three (3) plumb line positive articles [Holy Water - Not Guilty case, Prominent Civil Rights Lawyer - Public Activism and Medical Cannabis Disclosure with AL.com] which Google de facto suppresses completely.

53.    These are starkly contrasting with Google which had literally only negative news on all three pages for its thirty-eight response result for Plaintiff's name.  Positive news suppressed and not even retrieved by Google for the search. Reasonable and balanced Bing search results all attacks and fake news and life considered.DuckDuckGo - reasonable search results.

54.    Google thus excludes true information and or positive articles such as:

54.1.    https://www.al.com/breaking/2013/04/accused_holy_water_sprayer_j oy_2.html - Holy Water case with a verdict of "Not Guilty" references the Plaintiff as counsel and is completely suppressed, and not even listed on a Google News result despite being on Al.com but was ranked as #2 in prior SEOs on the platform.

54.2.    https://www.alreporter.com/2021/04/20/alabama-cannabis-coalition-to -hold-event-in-huntsville-today/ - Prominent Civil Rights Lawyer - Positive Articles;

54.3.    https://www.al.com/news/anniston-gadsden/2019/06/trenton-garmon- denies-wrongdoing-in-arrest-says-he-uses-medical-marijuana.html    - News article disclosing medical prescription which does not even

show up as a result in the Google "news" search and is suppressed to page 6 on the general Google Search while the defaming article by negative algorithm is on page one of both the "News" and general Google Search. Thus, Per Se and De Facto proof of the same objective news Platform with two articles, one questioning legality and the other confirming medical veracity, with the later being suppressed.

54.4.    https://theclick.news/meta-hit-with-alabama-class-action-lawsuit-over-childrens-privacy-rights-on-facebook/ - Positive Article available and not indicated even as a result on Google News.

54.5.    https://www.scribd.com/document/462659890/Pinellas-Sheriff-Falsely-Arrests-Lawyer-Pastor-Veteran-for-DUI-and-Child-Abuse    -
Confirms the actual "Not Guilty" and dispels fake news, but Google does not even return a result for this link despite the other search engines listing it.

54.6.    ttps://topclassactions.com/lawsuit-settlements/privacy/meta-class-action-alleges-company-violated-privacy-rights-of-minors-by-harvesting-their-data/ - Positive link listed by other search engines, but Google "News" completely suppresses it.

54.7.    https://about.me/trenton-garmon - Positive objective, general data source which Google suppresses.

55.    The top two (2) professional search engine remediation and reputation companies claimed it is "contractually impossible" to bring a fair search result contract to fruition given the negative algorithm. One gathered a team of no less than five (5) for a Zoom conference and refused to offer a contract for SEO balanced reputation optimization services citing the "algorithm" as fixed.    Charlotte 360 SEO Company was contracted and confirmed the existence of a negative algorithm.    The best in the business was consulted and set a Zoom Conference involving no less than five (5) purported "experts" in Search Engine Optimization, Online Reputational Balance and otherwise the coding sequential mechanics of online links which resulted in the conclusion that the Dark Algorithm was in fact categorizing the Plaintiff Father in a manner which made the contract unserviceable.

56.    All three pages for Google "News" search results by "Trenton Garmon" name only of the search giant list only negative news even with years of

articles to include current news site articles on Alabama political site that does not appear, article of time magazine, sport's news and articles that are online do not get crawled and displayed by Google Bot and requests for a fair search result balanced is ignored and facts are refused. This while DuckDuckGo, Bing and Yahoo.com all have balanced organic search engine results. The four Garmon minors names are linked to the Knowledge Panel and general Search Engine Result which utilizes the defaming, destructive selective algorithm.

57. Google's negative algorithm by intentionally suppressing positive articles and search results has created an intention result that "'tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" The absolute suppression of positive articles on Google "News" search is a per se indication of Defamation Per Quod and hence a tort per Alabama law.

58. The Defendants have caused damages which include financial loss wherein potential clients with injury cases have specifically stated they were choosing a different lawyer based upon their perception of a "Google Search" which displayed the negative algorithm results. Falsely imputed character issues regarding veracity or otherwise good will and character as the Plaintiff is an honorably discharged United States Army Vet, former pastor and inactive trial lawyer who honors and obeys good law and the Constitution, yet is depicted in a false light. The Defendants have caused significant financial damages to the law business of the Plaintiff therein due to be redressed.

59. The negative, fake algorithm has also negatively impacted relationships with life-long friends who are minority or otherwise who have not been in contact with the Plaintiff in-person and yet see a false light search result. The Plaintiff had a reputation of being a well-liked dual athlete accepted in all athletic circles and ministry circles and yet is defamed with false articles inputting racism and otherwise making outlandish claims that civil rights cases which are pro-people are exiling people groups not even related to the parties race or ethnicity involved. The "Algorithmic discrimination" of the Defendant is the "automated systems" which do contribute to unjustified different treatment or impacts disfavoring Trenton GArmon based on his Irish-Cherokee (Caucasian) race, Irish ethnicity, natural born male sex,

Catholic religion, national American origin, Army veteran status, and pro-life First Amendment classification protected by law.

60. And hence Google is by its negative algorithm causing personal relationship negative waves and issues, disruptions and loss of enjoyment due to subtle exiles from friends who are minority and read a false news article without the benefit of the corrections or otherwise rebuttal with actual facts. Many prior teammates have not in-person "seen" the Plaintiff and yet upon visits or chance encounters or events the defaming algorithm has caused a distancing effect and otherwise damaged the generally good and longstanding relationships of the Plaintiff with various communities.

61. Google is therefore supporting, facilitating, causing organically a projection and otherwise generating as part of its revenue and search engine based Platform, an anti-man and anti-Irish Catholic "News" search result algorithm which does not comport with an objective reflection of the Plaintiff's reputation. The Google Beast Algorithm excludes real, actual stories, fact-laden and displaying misquotes, misrepresentations or outright frauds against the Plaintiff while rebuttal records and news stories exist.

62. The Defendants have caused damages to the relationship between the Plaintiff and his minor children given friends and the community of the minor children have been inquired of by individuals who have viewed only the defaming and destructive negative algorithm results. The negative algorithm has caused damages to the relationship with the Plaintiff's minor children who have been asked or otherwise had comments made by third-parties regarding negative news which de facto correlates to the pattern of suppression herein identified.

63. Google based on social score defaming patterns suppresses a balanced reflection on its platform which is careless, negligent or malicious. The actions and algorithm coding for search engine results is Defaming of the Plaintiff and casts him in a false light which is due to be legally redressed by an award of damages.

WHEREFORE premises considered the Plaintiff does demand judgment following a jury trial on the merits of does demand Sixty-Six Million Six Hundred Thousand Dollars ($66,600,000) or $66.6 Million American Dollars.

## COUNT THREE
## PETITION AND CLAIM FOR INJUNCTIVE RELIEF

64. The Plaintiff is entitled after hearing to injunctive relief which is equitable relief to order Google, one of the Search Giants, to cease and desist running its violation of §6-5-771 utilizing without consent the "indicia of the image" and otherwise the likeness of the Plaintiff. Prior pleadings in response to the Complaint, First Amended Complaint and Second Amended Complaint confirm that the Defendant does not dispute the use of the Plaintiff's image only the intentions and or the reflections not being "defaming" or otherwise First Amendment Protected.

65. The Plaintiff does assert that he has the right to "go dark", "be digitally scrubbed" and or otherwise not have his "indicia of his image" be used without his consent or is due $5,000 per Statute.

66. The Plaintiff has requested the immediate removal and otherwise redaction from the Defendant's servers.

67. The Plaintiff originally made requests, Google ignored some, made certain changes and corrections and yet remains defiant of the Code of Alabama's intentions and the Plaintiff does desire to "be forgotten" by Google and does otherwise object to the Corporation's use of the "indicia of his image".

WHEREFORE, premises considered the Plaintiffs do herein Petition for Injunctive Relief as stated herein. Given the extent of damages, malicious nature, and overall sacred nature of civil rights the Plaintiff does demand Sixty-Six Million Six Hundred Thousand Dollars ($66,600,000).

Respectfully submitted this Friday the Trentesimo (13th) day of September 2024.

TRENTON[8] GARMON
75 Arling Place 35901

---

[8] Acts 20:24

trentongarmon@usa.com

## CERTIFICATE OF SERVICE

*The Plaintiff offers and certifies that Service of this Second Amended Complaint has been perfected upon the Counsel for Defendants by Electronic Mail.*

**James Pewitt, Esquire**

**s/ Trenton Garmon**

**- - - END OF PLEADING - TWENTY (20) PAGES - - -**

## EXHIBITS

### MITIGATION ATTEMPTS IN MISUSE OF INDICIA OF IMAGE PRIOR TO REQUEST TO BE SCRUBBED DIGITALLY

### ALL LINKS, IMAGES, REFERENCES TO THE LEGAL NAME, 'Indicia of Image" OF THE PLAINTIFF IS DUE TO BE REMOVED FROM GOOGLE'S VIDEO GAME, SEARCH ALGORITHM AND OTHERWISE CORPORATE PLATFORM

### DISENGAGEMENT AND CITIZEN-CORPORATION DIVORCE NOTICE ~ CEASE & DESIST CORPORATE USAGE OF 'INDICIA OF IMAGE' AND OTHERWISE CORPORATE DIGITAL STALKING, DEFAMING AND PROFITING OFF OF HIS IMAGE/NAME.



| Google Impressions/Results | Statutory Amount per Indicia | |
|---|---|---|
| 199000 | $5,000.00 | $995,000,000.00 |
| 216000 | $5,000.00 | $1,080,000,000.00 |

**Verbatim:**

**"Trenton Garmon"**

Plaintiff reserves the right to offer additional "Screenshots" and to present live SEO result comparisons to a Jury. In support, however, of this Second Amended Complaint the Plaintiff offers the follow:

*\*Defendants intentionally suppress all positive articles from the Google "News" search thirty-eight results deep  \*General Google Search with the Gainesville Police Brutality picture depicted as a "Attorney" professional picture while hundreds of other pictures are embedded online, thus indicating an intentional negative algorithm.  Also contains a knowledge block with inaccurate information which Google refuses to correct, to include "m. 2009" as "married" while the Plaintiff is divorced and is planning to Annul, Court, date and have a proper Church Marriage. Hence, the Google algorithm is even limiting accurate information negatively affecting the Courting of the Plaintiff.*

**Page 1 - Google "News" Search Result with all "positive articles" suppressed and not listed among the thirty-eight results.**



***Google "News" search lists 38 articles, all negative displaying on three pages and yet suppressing, thus not listing at all, or the plumbline positive articles. The Plaintiff has a "Medical Prescription" and was recommended Medical Cannabis having acute orthopedic pain following Army and College Athletics, is on the spectrum scale and was following doctors orders the***

*counter-news of which is suppressed intentionally by algorithm of Google.*

*One by al.com regarding a "Holy Water Case" victory and one on alreporter.com referring to Garmon as a Prominent Civil Rights Lawyer. So de facto results of the only three pages Google News search displays for the Plaintiff are thirty-eight negative results. The search also includes an "Ali Velshi" reference which has already been debunked and removed from Ali Velshi's wiki as all of the parties involved were Caucasian and the reference to race was imputing or baiting a non-existent issue, specifically wherein Velshi is Muslim and compared to the free choice marriages of Chrisitanity he is of a religious with forced marriages. Therefore, the debunking is suppressed and a race-baiting false context article is displayed by negative algorithm. The Plaintiff has had thousands of clients and the negative links to "Roy Moore" while suppressing positive articles is by design, defamatory, malicious and otherwise tortious.*

*The Plaintiff father has routinely denounced all forms of sexual abuse to include upon minors (NOW REMOVED) and the imbalanced, defaming algorith intentionally ignores the principle rebukes and denouncing of the alleged abuse of minors lodged against anyone he has represented in civil rights matters. Lawyer may maintain the standard of care by stating "if it occurred, it is wrong" while defending the side of the client's story wherein reasonable and believable during the process of representation. The negative algorithm seeks to defame and punish the reputation of Plaintiff Trenton Garmon by negative association with an alleged behavior of a prior client which does not correlate to the personal life of the Plaintiff nor does it provide a balanced perspective of his legal career across thousands of client representations.*



*****Google's negative search engine algorithm even choses a "nutty" troll and attack article of the Plaintiff wherein the actual transcript of the responses indicated disapproval of the client's alleged behavior and the fact laden response was coherent, rational and relevant to the professional services rendered in advocacy. Hence, Google suppresses positive, real articles and via negative algorithm lists a "troll" blog as an article part of its "News" results. The results indicate a "white ally" fake and attack article wherein an interview involving only Caucasian parties had imputed racism and the article imputs "color" or race into a case which had zero objective basis for the observation and the comment was made by a Muslim and the article is by an African-American, thus displaying a negative algorithm against an Irish-Cherokee Catholic aka Caucasian Christian.*

---

**Page 2 - Google "News" Search Result**



***The search result does not provide a fair and balanced result attaching without any counter or response, Google suppresses again positive results that Yahoo!, Bing.com and DuckDuckGo make retrievable. The results also suppress the misrepresentations of the CNN staff whose original, misrepresentative[9] invitation was for a discussion regarding a Foundation while Garmon was then asked regarding another story as the main content. The suppression per se is evident. The results also suppress charitable and philanthropic work as the Plaintiff has averaged 150 plus hours even up to over 1,000 hours of volunteer services either as pro bono or as a former Pastor of a multi-economic, multi-racial evangelical church.*

---

**Page 3 - Google "News" Search Result**

---

[9] Leading to the on-the-spot nickname seeking deference and "ease" in treatment due to the staff of Mr. **Don** "Cool & Crisp" like **Lemon** …ade, being less than forthright with their subject matter invitation.



***The negative news search result even excludes records, facts and services of Garmon to the named politician which Google takes such issue. Meaning the Plaintiff represented a controversial politician over a seven (7) year time period in no less than four (4) cases involving him and his family with all being considered successful and reasonable, albeit disputes of fact. Plaintiff successfully had the politicians real property taxes lowered, kept his son out of jail, and obtained increased family time in domestic issues all of which in general is public record, yet Defendants refuse by negative algorithm to render any of the positive results. Reference to "background of Ali Velsher" without including other online references to Velsher as a 'Muslim' while Christians do not arrange marriage, but rather age appropriate dating between the male and female gender. Objective negative algorithm coding related to being a Caucasian Christian.*



*Illustration from 20230828 of Google simple search basic "thumbnail" picture of one moment which included being the victim of police brutality and rather than displaying pictures of victories in court, victories in college football or baseball, family photos available online - the defendant Google's <u>negative algorithm</u> intentionally depicts a defaming moment in false light. The below pictures are available for thumbnail and "Attorney at Law" is displayed while the pictures is of the Plaintiff following civil activism and a framed arrest with police brutality involved. The description as an "Attorney" under a thumbnail not related to practicing law is per se indication of the negative algorithms intentions.*

## ARTICLES WITH TYPICAL/GENERAL PICTURES AND SITES SUPPRESSED

I.   https://www.al.com/breaking/2013/04/accused_holy_water_sprayer_joy_2.html - Holy Water case with a verdict of "Not Guilty" references the Plaintiff as counsel and is completely suppressed, and not even listed on a Google News result despite being on Al.com.

II.   https://www.alreporter.com/2021/04/20/alabama-cannabis-coalition-to-hold-event-in-huntsville-today/ - Prominent Civil Rights Lawyer - Positive Articles;

III.  https://www.al.com/news/anniston-gadsden/2019/06/trenton-garmon-denies-wrongdoing-in-arrest-says-he-uses-medical-marijuana.html - News of arrest on "drug charges" for a prescription shows up FIRST and then two other times for a total of three negative links while the response on the same platform (al.com) indicating a prescription shows up as number 24 on the bottom of page 2.   Thus the article disclosing medical prescription is suppressed in the Google "news" search while the "negative"/arrest article is listed on the first page as number one given the defaming article by negative algorithm.

IV.   https://theclick.news/meta-hit-with-alabama-class-action-lawsuit-over-childr ens-privacy-rights-on-facebook/  -  Positive  Article  available  and  not indicated even as a result on Google News.

V.    https://www.scribd.com/document/462659890/Pinellas-Sheriff-Falsely-Arres ts-Lawyer-Pastor-Veteran-for-DUI-and-Child-Abuse - Confirms the actual "Not Guilty" and dispels fake news, but Google does not even return a result for this link despite the other search engines listing it.

VI.   ttps://topclassactions.com/lawsuit-settlements/privacy/meta-class-action-alle ges-company-violated-privacy-rights-of-minors-by-harvesting-their-data/   - Positive link listed by other search engines, but Google "News" completely suppresses it.

VII.  https://about.me/trenton-garmon - Positive objective, general data source which Google suppresses.


**Social Media Accounts with Pictures and real-world accurate data and true stories:**

https://www.facebook.com/churchofthecoast/  -  Clear  and  balanced  pictures, newsfeed posts and videos of the Plaintiff which Google suppresses and otherwise ignores in its general search result.

https://www.trentongarmon.info - Clear and balanced timelines of the personal, philanthropic and professional life of the Plaintiff which Google intentionally ignores and otherwise suppresses in its general and "News" search result given article links and source material are included.

https://www.gfile.news - Rebuttal documents, links to videos and actual articles by the Plaintiff the later of which is a contribution to the open news forum and done in good faith. Thus, troves of accurate information.

https://www.gfile.legal  - Troves of data and even an AI Deep Learn Library with code which Google ignores in its web crawling and purported "organic" linking to the Plaintiff thus establishing de facto the negative algorithm.

https://www.medium.com

### *Below are Personal, Philothonpic and Professional picture available for Google Webcrawlers, ignored completely by the Search Giant.*



*Professional info site available for Google Webcrawlers, ignored completely by the Search Giant despite being listed by Yahoo!, Bing.com and DuckDuckGo within the first page as a natural organic platform disseminating true and accurate professional reputation information.*



*Chief Justice Tom Parker and Trenton Garmon*

***\*Professional picture available for Google Webcrawlers, ignored completely by the Search Giant indicating a professional relationship with the Alabama Chief Justice and good community standing within the Alabama State Bar, ignored and not displayed in the Knowledge Panel photo rotator by design of Google's negative and anti-conservative algorithm. As an Ally Attorney with the Alliance Defending Freedom, Garmon served 150 hours per year of pro bono on average to the poor, disenfranchised and oppressed Christians.***



Black Live Matter, Alabama Cannabis Coalition and Trenton Garmon @ Freedom Assembly with simultaneous announcment of Derek Chavin verdict from Huntsville, Alabama 20210420.

***Cannabis, Police Brutality and Liberty Civil Activism picture available for Google Webcrawlers, ignored completely by the Search Giant which was covered in the news by alreporter.com and al.com, yet suppressed by the Google "news" negative search algorithm. Garmon averages 350 - 500 hours per year in Christian or Civil Rights "volunteer" service data and pictures of which the Defendant Google intentionally ignores by algorithm.***



*United States Federal Marshall outside the Northern District Federal Court n Birmingham, Alabama USA confirming the drone fly zone our certified drone Pilot, John Tomik, had as a setting threshold was accurate and strictly enforced.

*Professional picture available for Google Webcrawlers, ignored completely by the Search Giant depicting Garmon having a peaceful, orderly and civilized conversation with a U.S. Marshall wherein he fully obeyed and cooperated as has been his general reputation as an honorably discharged US Army Vet, dual college athlete and professional.



Trent & Laurence
Gainesville. Florida

*Personal picture available for Google Webcrawlers, ignored completely by the Search Giant despite being the context of who was with Garmon during the police surveillance and immediately before being dropped off at a hotel where Garmon was assaulted and battered by Law Enforcement all on video which is also online for web crawling.*

*Personal picture available for Google Webcrawlers, ignored completely by the Search Giant.*



***\*Personal, professional, corrective and contextualizing picture available
for Google Webcrawlers, ignored completely by the Search Giant
regarding an incident of Police Brutality upon Plaintiff for calling "mass
incarceration" "modern slavery".  But rather than tag/link/associate this
picture in the Knowledge Panel rotator or an actual professional picture of
Garmon, Google choses to cast a false light using a photo of him***

37

*immediately after an assault and body cavity strip search.*



*Christian Broadcasting News & GFN – All Rights Reserved

*Professional picture available for Google Webcrawlers, ignored completely by the Search Giant.



38

*Professional picture available for Google Webcrawlers, ignored completely by the Search Giant.



Timothy J. MaGee, Esquire.
Lawrence Tynes, NFL Hall of Famer.
Trenton Garmon, Esquire.
At Troy University Hall of Fame
Induction of LT.

*Personal picture available for Google Webcrawlers, ignored completely by the Search Giant.



*Dr. Jack Hawkins, Troy University Chancellor and Trenton Garmon*

*Personal picture available for Google Webcrawlers, ignored completely by the Search Giant.

40



{Node} {Mark Williams, Jonathan Green, Trenton Garmon, Michael Hastings, Alex Moore, Jeff Enke, Craig Cunningham, Jeff Kenney, Smitty and team after Valley Forge Football game – Army Football} [1999]



\*Personal picture available for Google Webcrawlers, ignored completely by the Search Giant.

----------

ALGORITHMIC DISCRIMINATION: "Algorithmic discrimination"[10] occurs when automated systems contribute to unjustified different treatment or impacts disfavoring people based on their race, color, ethnicity, sex (including pregnancy, childbirth, and related medical conditions, gender identity, intersex status, and sexual orientation), religion, age, national origin, disability, veteran status, genetic information, or any other classification protected by law. Depending on the specific circumstances, such algorithmic discrimination may violate legal protections. Throughout this framework the term "algorithmic discrimination" takes this

---

[10] Accessed 20240708:
https://www.whitehouse.gov/ostp/ai-bill-of-rights/definitions/#:~:text=ALGORITHMIC%20DISCRIMINATIO N%3A%20%E2%80%9CAlgorithmic%20discrimination%E2%80%9D,identity%2C%20intersex%20status %2C%20and%20sexual

meaning (and not a technical understanding of discrimination as distinguishing between items).

AUTOMATED SYSTEM: An "automated system" is any system, software, or process that uses computation as whole or part of a system to determine outcomes, make or aid decisions, inform policy implementation, collect data or observations, or otherwise interact with individuals and/or communities. Automated systems include, but are not limited to, systems derived from machine learning, statistics, or other data processing or artificial intelligence techniques, and exclude passive computing infrastructure. "Passive computing infrastructure" is any intermediary technology that does not influence or determine the outcome of decision, make or aid in decisions, inform policy implementation, or collect data or observations, including web hosting, domain registration, networking, caching, data storage, or cybersecurity. Throughout this framework, automated systems that are considered in scope are only those that have the potential to meaningfully impact individuals' or communities' rights, opportunities, or access.

COMMUNITIES: "Communities" include: neighborhoods; social network connections (both online and offline); families (construed broadly); people connected by affinity, identity, or shared traits; and formal organizational ties. This includes Tribes, Clans, Bands, Rancherias, Villages, and other Indigenous communities. AI and other data-driven automated systems most directly collect data on, make inferences about, and may cause harm to individuals. But the overall magnitude of their impacts may be most readily visible at the level of communities. Accordingly, the concept of community is integral to the scope of the Blueprint for an AI Bill of Rights. United States law and policy have long employed approaches for protecting the rights of individuals, but existing frameworks have sometimes struggled to provide protections when effects manifest most clearly at a community level. For these reasons, the Blueprint for an AI Bill of Rights asserts that the harms of automated systems should be evaluated, protected against, and redressed at both the individual and community levels.

EQUITY: "Equity" means the consistent and systematic fair, just, and impartial treatment of all individuals. Systemic, fair, and just treatment must take into account the status of individuals who belong to underserved communities that have

43

been denied such treatment, such as Black, Latino, and Indigenous and Native American persons, Asian Americans and Pacific Islanders and other persons of color; members of religious minorities; women, girls, and non-binary people; lesbian, gay, bisexual, transgender, queer, and intersex (LGBTQI+) persons; older adults; persons with disabilities; persons who live in rural areas; and persons otherwise adversely affected by persistent poverty or inequality.

RIGHTS, OPPORTUNITIES, OR ACCESS: "Rights, opportunities, or access" is used to indicate the scoping of this framework. It describes the set of: civil rights, civil liberties, and privacy, including freedom of speech, voting, and protections from discrimination, excessive punishment, unlawful surveillance, and violations of privacy and other freedoms in both public and private sector contexts; equal opportunities, including equitable access to education, housing, credit, employment, and other programs; or, access to critical resources or services, such as healthcare, financial services, safety, social services, non-deceptive information about goods and services, and government benefits.

SENSITIVE DATA: Data and metadata are sensitive if they pertain to an individual in a sensitive domain (defined below); are generated by technologies used in a sensitive domain; can be used to infer data from a sensitive domain or sensitive data about an individual (such as disability-related data, genomic data, biometric data, behavioral data, geolocation data, data related to interaction with the criminal justice system, relationship history and legal status such as custody and divorce information, and home, work, or school environmental data); or have the reasonable potential to be used in ways that are likely to expose individuals to meaningful harm, such as a loss of privacy or financial harm due to identity theft. Data and metadata generated by or about those who are not yet legal adults is also sensitive, even if not related to a sensitive domain. Such data includes, but is not limited to, numerical, text, image, audio, or video data.

SENSITIVE DOMAINS: "Sensitive domains" are those in which activities being conducted can cause material harms, including significant adverse effects on human rights such as autonomy and dignity, as well as civil liberties and civil rights. Domains that have historically been singled out as deserving of enhanced data protections or where such enhanced protections are reasonably expected by

44

the public include, but are not limited to, health, family planning and care, employment, education, criminal justice, and personal finance. In the context of this framework, such domains are considered sensitive whether or not the specifics of a system context would necessitate coverage under existing law, and domains and data that are considered sensitive are understood to change over time based on societal norms and context.

SURVEILLANCE TECHNOLOGY: "Surveillance technology" refers to products or services marketed for or that can be lawfully used to detect, monitor, intercept, collect, exploit, preserve, protect, transmit, and/or retain data, identifying information, or communications concerning individuals or groups.    This framework limits its focus to both government and commercial use of surveillance technologies when juxtaposed with real-time or subsequent automated analysis and when such systems have a potential for meaningful impact on individuals' or communities' rights, opportunities, or access.

UNDERSERVED COMMUNITIES: The term "underserved communities" refers to communities that have been systematically denied a full opportunity to participate in aspects of economic, social, and civic life, as exemplified by the list in the preceding definition of "equity."